Commonwealth *v.* Badger, Appellant.

Argued March 21, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Kenneth D. Brown,* Assistant Public Defender, with him *John A. Felix,* Public Defender, for appellant.

*Allen E. Ertel,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., February 2, 1976:

Appellant contends that the trial court erred in refusing to admit the signed statement of her alleged co-conspirator and that trial counsel was ineffective in failing to request that the trial judge recuse himself following appellant's withdrawal of her guilty plea.

The circumstances leading to appellant's arrest for conspiracy, possession and delivery of heroin were related by Trooper Blackledge, of the State Police, who had assumed the role of an undercover narcotics agent. He testified that he arranged with Launey Rivers to meet at a residence in Williamsport on March 14, 1974, to purchase a quantity of heroin. Trooper Blackledge arrived at the home and engaged in conversation with Rivers and Robert Moore. Appellant was present during the negotiations, but did not take an active part in the discussion. Subsequently, appellant left the residence and drove to another house in Williamsport which was under surveillance, and then returned, carrying a paper bag containing three hundred glassine bags of heroin.

On September 30, 1974, appellant tendered a guilty plea. After the prosecutor summarized the Commonwealth's evidence, the trial judge asked appellant whether she was admitting this version of the case. When appellant responded negatively, the trial judge requested that

appellant relate her account. At that point, appellant's counsel informed the court that appellant now wished to enter a plea of not guilty and proceed to trial. The trial judge did not offer to recuse himself and defense counsel did not request that he do so. The case proceeded to trial and appellant was found guilty, and sentenced to a term of five to twelve years.[1]

At trial, appellant attempted to call Robert Moore as a witness, but he advised the court that he would invoke his Fifth Amendment privilege against self-incrimination. Appellant then offered a typed statement accompanied by a notarized affidavit signed by Robert Moore. The Notary Public, who was also an attorney, testified that Robert Moore read the entire statement before signing the affidavit. The statement was taken in Lycoming

---

1. Appellant argues that the sentence imposed, although within the statutory limits, should be reduced because it is manifestly excessive. We do have the power to modify such a sentence. See *Commonwealth v. Riggins*, 232 Pa. Superior Ct. 32, 332 A.2d 521 (1974); *Commonwealth v. Warner*, 227 Pa. Superior Ct. 291, 324 A.2d 361 (1974).

Appellant relies mainly on correspondence between the trial judge, Judge RAUP, and trial counsel, which has been made a part of the record of this case. Appellant's co-conspirator, Robert Moore, subsequently pleaded guilty to these charges, and was given a sentence of four to twelve years by Judge GREEVY; the other person implicated in the transaction, Launey Rivers, was convicted by a jury and sentenced to serve a prison term of ten to thirty years by Judge RAUP. In a letter to trial counsel, Judge RAUP stated:

"At the time of sentencing, I considered that the five to twelve year sentence fairly represented the seriousness with which a $1500.00 wholesale drug transaction must be held, and *I still consider that, by itself, it represents a fair sentence. However, when compared to the Moore and Rivers sentences, I must acknowledge that there is an element of inequity.* Miss Badger was by far the youngest participant, had no significant criminal record *when compared to her co-conspirators*, and in all likelihood would not have an offense of this degree of seriousness had it not been for her association with Mr. Moore. *In relationship to the sentences received by her co-conspirators*, it would appear to me that a sen-

County Prison when Moore was under indictment as a result of his participation in this transaction. The statement tended to exculpate appellant by alleging that appellant was an innocent conduit who had no knowledge of the transaction or the contents of the paper bag. Although the statement does not contain the words "I am guilty of this charge," the trial judge concluded that "there is an inevitable inference that the declarant knowingly participated in the sale of a drug to the trooper at the time in question." Although it found the statement to be against penal interest, the trial court refused to admit the statement into evidence, because it believed the statement was inadmissible hearsay.

In *Commonwealth v. Nash*, 457 Pa. 296, 324 A.2d 344 (1974), our Supreme Court stated that the Supreme Court's decision in *Chambers v. Mississippi*, 410 U.S. 284 (1973), did not require the admission of every declaration against penal interest. Our Court had adopted a

---

tence of not less than three nor more than ten years would have been more appropriate.

"As you know, this Court can no longer reconsider sentence as more than thirty days have elapsed. However, it occurs to me that Miss Badger may, in time, decide to seek commutation of her sentence, and I am writing to advise you that this letter may be used in her behalf at such time." (Emphasis added).

Modification of a legal sentence by an appellate court is tantamount to a holding that the trial court abused its discretion in imposing sentence. Thus, we must focus on the time the discretion was exercised, not at some future date when hindsight affects the consideration. Judge RAUP's letter makes clear that he believed the five to twelve year sentence was fair, and that he still believes it to be a fair sentence when viewed in isolation. It is only when compared to the later sentence received by Moore that appellant's sentence appears unjust. When examined solely against the circumstances existing at the time sentence was imposed, the sentence is not manifestly excessive. This is not to discount the possibility that appellant is entitled to some relief on the basis of disparity of sentences. The proper forum for making such a judgment, however, would be a pardons or commutation board.

similar view in *Commonwealth v. Hackett*, 225 Pa. Superior Ct. 22, 307 A.2d 334 (1973). The lower court, relying on the lead opinion in *Nash*, held that the statement offered in the instant case was not made under circumstances that provided considerable assurance of its reliability.[2]

The concurring opinion in *Nash* offered a different solution to the problem of the admissibility of declarations against penal interest. Justice ROBERTS, speaking for Chief Justice JONES and Justice POMEROY, stated that "... this Court should adopt as part of the common law of evidence the view permitting extrajudicial declarations against penal interest to be admitted into evidence as an exception to the hearsay rule. No need would then exist to consider the constitutional issues presented by these cases." 457 Pa. at 303, 324 A.2d at 347. The test advanced by Justice ROBERTS would require the admission of the statement if "its proponent can show that the declaration states facts that are against the penal interest of the declarant, and that the declarant is unavailable at the time of trial. McCormick's Handbook of the Law of Evidence §276 (2d ed. E. Cleary 1972)." Id. at 305-306, n.4, 324 A.2d at 348, n.4.

There is no need in the instant case to decide if the statement is admissible under either the lead or concurring opinion in *Nash*, because our Supreme Court has recently held that a similar statement offered under similar circumstances was inadmissible. See *Commonwealth v. Colon*, 461 Pa. 577, 337 A.2d 554, 558 (1975).[3] The

---

2. The lead opinion expressed the view of Justice O'BRIEN, its author, and Justice EAGEN. Justice NIX concurred in the result and Justice MANDERINO did not participate in the decision. Chief Justice JONES and Justice POMEROY joined the concurring opinion of Justice ROBERTS.

3. The lead opinion in *Colon* was authored by Justice ROBERTS, and joined by Chief Justice JONES and Justice MANDERINO. Justice POMEROY filed a Concurring Opinion, while Justices EAGEN, O'BRIEN, and NIX concurred in the result.

lead opinion in *Colon* holds that a statement against penal interest is "divisible" for the purpose of determining its admissibility, and that any portion of the statement which tends to exculpate possible accomplices is inadmissible because it is not against interest: "By telling the police that he acted alone, Hernandez admitted no additional crime, subjected himself to no additional punishment. Since it was not contrary to Hernandez's interest to assert he acted alone, the portion of the statement in which he claimed to have acted alone does not have the safeguards of trustworthiness attributed to a statement truly against interest." See also *United States v. Marquez,* 462 F. 2d 893 (2d Cir. 1972) ; *United States v. Seyfried,* 435 F. 2d 696 (7th Cir. 1970), cert. denied, 402 U.S. 912 (1971). Thus, that portion of Moore's statement which tended to exculpate appellant was correctly held inadmissible.

The remainder of the declaration was clearly against Moore's penal interest. The facts contained in the statement would subject Moore to possible criminal sanction. In fact, the District Attorney at the close of trial instructed appellant's counsel to retain the statement because "[i]t will be requested by the Commonwealth in the case of Robert Moore and that is evidence in that case." Furthermore, the declarant was "unavailable" because he invoked his constitutional privilege against self-incrimination. See *Commonwealth v. Colon,* supra; McCormick's Handbook of the Law of Evidence, supra, §280; 5 J. Wigmore, Evidence, §1409 (Chadbourn rev. 1974). The declaration, therefore, meets the test for admissibility offered by the concurring opinion in *Commonwealth v. Nash,* supra. However, as was the case in *Colon,* the declaration is inadmissible because it is not relevant: "Throughout appellant's trial, it was the Commonwealth's theory that Hernandez and appellant had acted together in committing the crime. Thus Hernandez's statement admitting his role in the crime was not inconsistent with

the Commonwealth's theory of the crime. As such, his confession did not meet the test of relevancy because it would not tend to make the inference that Colon did not participate in the crime more likely. McCormick, supra §185." *Commonwealth v. Colon,* supra at 585-586, 337 A.2d at 558. The same rationale applies here. The Commonwealth does not contend that either appellant or Moore alone committed the crime; its theory is that both were criminally involved. Thus, the statement was properly excluded.

Appellant's final contention is that she was denied effective assistance of counsel because her trial attorney failed to ask the judge to recuse himself following appellant's withdrawal of her guilty plea. Because appellant's present counsel did not represent her at trial, the issue is properly before us. See *Commonwealth v. Dancer,* 460 Pa. 95, 331 A.2d 435 (1975).

Before the issue of ineffectiveness can be resolved, however, it must first be decided whether, under the facts of this case, it would be reversible error for a trial judge to deny a request that he recuse himself. In *Commonwealth v. Goodman,* 454 Pa. 358, 362, 311 A.2d 652, 654 (1973), our Supreme Court held that a "judge should honor a request for recusation where prejudicial information is received in a pre-trial proceeding that would be otherwise inadmissible during the trial of the cause." That is precisely what occurred in the instant case. The prejudicial nature of a prior guilty plea was discussed in the recent case of *Commonwealth v. Conti,* 236 Pa. Superior Ct. 488, 345 A.2d 238 (1975), where we held that it was reversible error for a trial judge to deny a motion for mistrial after hearing testimony that the defendant had pleaded guilty at a preliminary hearing, even though the judge sat without a jury. *Conti* did not announce a fixed rule for determining when a trial judge "will be regarded as having been able to maintain his impartiality after hearing incompetent evidence," 236 Pa. Superior

Ct. at 501, 345 A.2d at 245, but noted that two factors are of "critical import" in a case-by-case determination: the inherently prejudicial nature of the evidence involved, and the importance of the evidence to the particular case, i.e., the extent of other evidence of guilt. Although the Commonwealth's other evidence in the instant case is stronger than it was in *Conti*, it would seem that had counsel requested recusation, it would have been error for the trial judge to refuse.

The fact that trial counsel failed to proceed before a different judge, however, is not dispositive of the issue presently before us. It is one thing to say that counsel could have successfully requested recusation; it is quite another matter to hold that his client was denied her right to effective assistance of counsel by his failure to do so. The standard for judging ineffectiveness is well-settled: "We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604-605, 235 A.2d 349, 352-353 (1967). It is not necessary to inquire into possible prejudice to the defendant "[s]ince our test requires that we examine the approach employed by trial counsel in light of the available alternatives, a finding of ineffectiveness could never be made unless we concluded that *the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized.* Obviously, then, if there is no reasonable basis to support trial counsel's decisions (a finding prerequisite to a con-

clusion of ineffectiveness), his decisions a fortiori were prejudicial to the client." 427 Pa. at 605, n. 8, 235 A.2d at 353, n. 8. (Emphasis added).

In the instant case, appellant initially tendered a plea of guilty. During the District Attorney's recitation of the facts, he stated that appellant told Trooper Blackledge "This is my deal." When the District Attorney concluded his summary, defense counsel stated: "She didn't say anything to the effect this was her deal or anything like that. If there was any shortage, she would make it up. [The District Attorney] seemed to imply that it was her deal totally." The officer, upon questioning from the bench, admitted that this alleged statement by appellant was not included in his testimony at the preliminary hearing, but was in fact true. At that point, the trial judge asked appellant if those were the facts she was admitting. When appellant stated that they were not, defense counsel informed the court that appellant now wished to change her plea.

It is fair to infer that counsel and appellant, after reviewing the testimony at the preliminary hearing, decided that it was in appellant's best interest to plead guilty, because she was not depicted as the "ringleader" of the transaction. During the colloquy, however, it became apparent that the Commonwealth would now rely on a previously undisclosed fact: that appellant had stated that it was "her deal." Because this evidence placed appellant in a worse light than counsel had anticipated, it was certainly reasonable to withdraw the plea. It should be noted that counsel was prepared to go to trial, and to use Robert Moore's statement as the defense.

At this point, then, counsel had two distinct choices: he could proceed before Judge RAUP, or he could request recusation and go to trial before another judge at a later time. In deciding whether counsel's decision constituted ineffective assistance, we must determine whether appellant's chances of success before a judge who did not know

that she had previously entered a plea of guilty, were "substantially greater" than the chances of success before Judge RAUP. In this regard, it is important that the Commonwealth's evidence was particularly strong: Trooper Blackledge was prepared to testify that appellant was present while he negotiated a heroin transaction with Robert Moore, that appellant left the residence and drove to another house which was under surveillance, that appellant returned with a paper bag which contained three hundred glassine bags of heroin. There is little to do by way of defense against this kind of evidence. Counsel could place appellant on the stand and have her testify that she had no knowledge of the contents of the bag, or counsel could, as he did, attempt to introduce Moore's statement. It certainly is *possible* that another judge would have either believed appellant's testimony or admitted Moore's statement and credited it as true. In view of the Commonwealth's evidence, that possibility seems remote. It would be naive to declare this attorney *ineffective* merely because he did not take advantage of a possibility of delay. Certainly, the chances of success before another judge were not "substantially greater" than they were before Judge RAUP.

Judgment of sentence is affirmed.

PRICE, J., concurs in the result.

———

DISSENTING OPINION BY SPAETH, J.:

Appellant initially offered a plea of guilty before Judge RAUP, but when the guilty plea colloquy disclosed that the Commonwealth would try to depict her as the ringleader of the transaction, she withdrew her plea. Thereupon appellant waived her right to a jury trial and began a bench trial with Judge RAUP presiding. Although the entry and withdrawal of the plea and the commencement of the bench trial occurred in immediate sequence, appellant's counsel did not ask the judge to recuse him-

self. I think counsel's failure to do so denied appellant effective assistance of counsel. I would therefore vacate the judgment of sentence and grant appellant a new trial.

The standard for judging ineffectiveness of counsel is well-settled:

> "We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had *any reasonable basis*." *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604-605, 235 A.2d 349, 352-353 (1967). (Emphasis added) [1]

Neither the majority opinion, the Commonwealth's brief, nor the lower court record suggests "any reasonable basis" for counsel's failure to request Judge RAUP'S recusal; nor can I imagine one. A guilty plea is inherently prejudicial. Counsel cannot reasonably assume that a judge as the trier of fact will be able to put that plea out of his mind and arrive at an impartial adjudication of guilt. *See Commonwealth v. Conti,* 236 Pa. Superior Ct. 488, 345 A.2d 238 (1975).

---

1. The majority correctly quotes the standard, but does not apply it. Instead the majority fashions a new test from a footnote in *Washington:* whether appellant's chances of success would have been "substantially greater" had her attorney chosen an alternative tactic. 427 Pa. at 605, n. 8, 235 A.2d at 353, n. 8, quoted in the majority opinion at 292-3. Since both the Supreme Court and this court have consistently reaffirmed the *Washington* standard of "no reasonable basis," *Commonwealth v. Nole,* 461 Pa. 314, 336 A.2d 302 (1975); *Commonwealth v. Betts,* 234 Pa. Superior Ct. 642, 645, 341 A.2d 912 (1975), I believe we should continue to apply it.

. Furthermore, it is unreasonable to expect that a judge will not be annoyed at being put through the efforts of what, in light of the original plea, might seem to be a futile trial. By permitting his client to be tried by a potentially annoyed judge, counsel is not only gambling on the impartiality of the adjudication of guilt, but is also risking the imposition of an excessive sentence. In this case, that is exactly what resulted,[2] as shown by the trial judge's letter recommending reduction of the sentence.

A fair trial before an impartial tribunal is a basic requirement of due process. *Peters v. Kiff*, 407 U. S. 493 (1972) (judgment of the Court, per MARSHALL, J.) ; *In re Murchison*, 349 U.S. 133 (1955) ; *Tumey v. Ohio*, 273 U.S. 510 (1927) ; *Commonwealth ex rel. Light v. Maroney*, 413 Pa. 254, 196 A.2d 659 (1964). It is therefore fundamental that counsel take every possible reasonable measure to assure that his client is tried before an impartial judge. Counsel here took no such measures, thereby denying appellant effective assistance of counsel.

---

2. Thus, even if we were to use the majority's standard of ineffectiveness, counsel here would have been ineffective. That is, his chances of success in obtaining a suitable sentence for his client were "substantially greater" before another judge. Indeed, one of appellant's co-participants, who was more involved in the transaction than appellant, was sentenced by another judge to a term of four to twelve years—a sentence with a minimum term one year shorter than appellant's.