Commonwealth *v.* Wright, Appellant.

Submitted April 18, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Joel S. Perr*, for appellant.

*Robert L. Eberhardt*, Assistant District Attorney, *John M. Tighe*, First Assistant District Attorney, and

*John J. Hickton,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, P.J., April 22, 1976:

This is an appeal from the judgment of sentence entered on conviction in a non-jury trial of the charge of rape in the Court of Common Pleas of Allegheny County, Criminal Division, and from denial of post-trial motions.

The single issue presented is whether the Commonwealth showed an in-court identification, independent of, and not tainted by, a prior lineup identification which had been suppressed.

The victim, Ms. Ginyard, was returning from work at 10:00 P.M. on January 29, 1971 in the Wilkinsburg area of Pittsburgh. As she climbed a flight of steps, a man approached her from the rear, shoved her, ran in front and faced her with a gun. The victim and the assailant were ten or fifteen feet from a street light at the head of the stairs during the ten minute encounter and conversation on the stairs. The man then took her through some yards to the area where the crime took place. Following the incident the victim notified the police, describing her assailant as a black male, 5' 10", medium brown skin, wearing a beige trench coat and a floppy hat.

In the course of the next three weeks the victim attended three different lineups. She did not identify any person at the first two but did identify appellant at the third lineup held February 20, 1971. Five other rape victims viewed this third lineup following which the six victims were taken by the police as a group to a large room where four victims, including Ms. Ginyard, identified appellant. However, Ms. Ginyard was the first of the assembled group to identify appellant. Following a hearing, the court ruled any testimony concerning the third lineup would be suppressed. At trial, over the objection of appellant's counsel, the court permitted the victim to make an in-court identification of appellant.

Appellant points to the fact that the victim described her assailant as medium brown in color, wearing a beige trench coat, whereas the police officer recorded the victim's description of her assailant as having dark skin and wearing a dark coat. Reliance is also placed on the fact that the police photo taken at his arrest showed appellant wearing a mustache and goatee, a fact not mentioned by the victim in her description. At trial Ms. Ginyard explained she saw no point in mentioning the mustache as all black men she knew had a mustache.

Where a prior out-of-court identification has been suppressed as constitutionally invalid, the in-court identification must be established on an independent basis by sufficient evidence. *United States v. Wade*, 388 U.S. 218, 240, 87 S. Ct. 1926, 1939 (1967). The various factors to be considered in determining whether identification has been established on an independent basis are enumerated in *Commonwealth v. Futch*, 447 Pa. 389, 396, 290 A.2d 417 (1972), quoting from *United States v. Wade*, supra. Applying these principles here, we find (1) the victim viewed her assailant under a street light for ten minutes, (2) any discrepancy in the victim's description of her attacker was minimal, (3) the victim refrained from making a false identification at two prior lineups, (4) little more than three weeks elapsed between the time of the offense and her identification at the third lineup, (5) the in-court identification was definite and unwavering.

There has been a public outcry against court procedures involving rape victims and it is long overdue that we consider the rights of victims of crimes as well as the rights of defendants. This case is an example of the travail this witness experienced in trying to obtain justice against her assailant. It is true that the defendant in this case was included in a pre-trial lineup and was identified by the victim. This identification was suppressed by the same judge who sat at trial. The court permitted the in-court identification as being free of

taint and was the sole basis for determining guilt by the judge sitting without a jury. He referred to the suppressed lineup identification in his opinion merely to indicate the positive and clearly unshaken identification of the appellant by the victim in court and did not indicate reliance on the lineup to allow the independent in-court identification.

A review of the record of this appeal clearly establishes that the in-court identification had a basis independent of the identification made at the lineup which was suppressed.

Judgment of sentence affirmed.

DISSENTING OPINION BY SPAETH, J.:

The difficulty in this case arises from the fact that the judge at the suppression hearing and the judge at the non-jury trial were the same.[1]

At the suppression hearing the judge, after extended testimony, found that the victim's identification of appellant at a line-up had been suggested by the circumstances under which the line-up had been conducted. He therefore ordered the identification suppressed. Ordinarily when a hearing judge makes such a finding and order, he goes on to consider whether the victim can identify the defendant for reasons independent of the line-up, as for example because she had a clear look at her attacker and noticed something distinctive about his face or clothing. Depending upon the evidence, the judge then either finds that the victim can make an independent identification of the defendant, in which case he orders that she may do so at the trial, or that she cannot make such an identification, in which case he suppresses any identification testimony by her. In

---

1. Why defense counsel did not ask at trial that the judge recuse himself is not apparent. *See Commonwealth v. Conti*, 236 Pa. Superior Ct. 488, 345 A.2d 238, 242-46 (1975); *Commonwealth v. Badger*, 238 Pa. Superior Ct. 284, 294, 357 A.2d 547, 552 (1975) (SPAETH, J., dissenting).

the present case, however, the judge did not make such a further finding and order. Instead, after ordering that the victim's "identification at the time of the line-up be suppressed," he went on to order: "and further that, at the time of the trial of this case, the victim ... not be allowed to make an in-court identification unless the Commonwealth is able to establish that such identification has not been affected or tainted by the participation of [the victim] in the line-up herein referred to."

At the trial the judge concluded that the Commonwealth had shown that the victim's identification of appellant had not been affected by her participation in the line-up. He therefore permitted her to identify appellant as her attacker. In his opinion sur appellant's post-trial motions, the judge explains the reasons for his conclusion.

First the judge discusses the victim's testimony that the lighting was sufficient for her to see her attacker, that she saw him for about ten minutes from a distance of no more than two feet, and that during the ten minutes she and her attacker conversed. Then the judge discusses certain discrepancies between the victim's initial description of her attacker and a later description, stating that he "determined that such factual discrepancies were insignificant."

So far so good. Then, however, the judge says this:

"Miss Ginyard [the victim] attended a total of three lineups. (T-13). No identification was made at the first two lineups. (T-16). The third lineup was the first in which the defendant was included. The positive identification of the defendant made by Miss Ginyard following the third lineup was positive and without hesitation and remained unshaken during the subsequent hearings and trial. The lineup in which the defendant was identified by the victim occurred within three weeks after the event. Such an interval is not sufficient to shade an otherwise sound identification."

Thus the judge as trial judge referred to the very line-up identification that as suppression judge he had suppressed. Nor was it a casual reference. To the contrary, in characterizing the suppressed identification as "positive," "without hesitation," and "unshaken," he can only be saying that the fact that the line-up identification was so good[2] demonstrates, or at least corroborates, his conclusion that the victim had a basis of identification independent of the line-up.

There can be no doubt that if the judge had been sitting with a jury, and the jury had heard the suppressed line-up identification, a new trial would have to be ordered. *Commonwealth v. Ehly*, 457 Pa. 225, 233-236, 319 A.2d 167, 172-73 (1974). The question, therefore, is whether it matters that the judge was sitting without a jury.

Sometimes it is held that it does matter. Suppose for example the judge hears hearsay testimony. The reasoning is that since he is legally trained, it may be assumed that he knew enough, and was able, to put the testimony out of his mind. This reasoning must always take into account, however, the inherently prejudicial quality of the specific evidence involved, and the importance of that evidence to the particular case. As we said in *Commonwealth v. Conti, supra* at 501, 345 A.2d at 245,[3] collecting and discussing the cases, we do "not simply rely on the fiction of a judicial blindside" but rather look to the facts of each case to decide whether "a trial judge [was] able to maintain his impartiality after hearing incompetent evidence."

Here the judge's opinion demonstrates that he was not able to maintain his impartiality. Had he made no reference in his opinion to the line-up identification, the question would be whether as trial judge he could maintain his impartiality, even after he had as suppres-

---

2. One can only wonder, why, then, had he suppressed it?
3. JACOBS and PRICE, JJ., dissented.

sion judge heard incompetent evidence. That would be the same question as was presented in *Conti* and the cases like it, although how it would be answered is by no means clear; there would be good arguments both ways — *pro* a new trial, that the line-up identification was so prejudicial that we could not rely on judicial blindside, or *contra*, that it was more in the nature of evidence corroborative of the in-court identification and we could count on the judge putting it out of his mind. Here, however, the judge not only referred to the line-up identification, but, characterizing it in a manner inconsistent with his suppression order, relied upon it.

In these circumstances the pertinent case is *Commonwealth v. Oglesby*, 438 Pa. 91, 263 A.2d 419 (1970).[4] There the trial judge's statement from the bench disclosed that despite his having found the defendant guilty, he had had a reasonable doubt, which was not dispelled until he examined evidence that would have been inadmissible at the trial, specifically, the defendant's criminal record. Taking the judge at his word, the Supreme Court said, "[W]e cannot say that the trier of fact was convinced by admissible evidence that [the defendant] was guilty beyond a reasonable doubt." *Id.* at 94, 263 A.2d at 420. Accordingly, a new trial was ordered. Here, we cannot be sure that the trial judge was convinced by admissible evidence that the victim could independently identify her attacker. The reason we cannot be sure is that the judge says he arrived at his conclusion partly on the basis of inadmissible evidence. I would take him at his word, and order a new trial.

HOFFMAN, J., joins in this opinion.

---

4. *See also Commonwealth v. Molina*, 236 Pa. Superior Ct. 598, 346 A.2d 351 (1975) (SPAETH, J., joined by HOFFMAN and CERCONE, JJ. dissenting).