488 A.2d 53

**In re DAMON B., a Minor Child.**

**Appeal of JOAN B., Mother of the Minor.**

Superior Court of Pennsylvania.

Argued October 25, 1984.

Filed Feb. 1, 1985.

Petition for Allowance of Appeal Denied Aug. 5, 1985.

598

Lorraine D. Taylor, McKeesport, for appellant.

Mark P. Cancilla, Pittsburgh, for appellee.

Before SPAETH, President Judge, and BROSKY and OLSZEWSKI, JJ.

BROSKY, Judge:

This appeal is from an order [1] continuing custody with the foster parents, providing for visitation with the natural

---

1. We note with concern that only a week less than a year has elapsed from the date of the order appealed from to the date of oral argument

mother every 90 days and directing Children and Youth Services to "take appropriate action to achieve the goals of its permanent plan for said child consistent with the above findings." Those findings concluded with the following:

(35) This child's primary need at this time is security in his placement with the Krepineviches.[2]

(36) Though not guaranteed, termination of parental rights and adoption by the Krepineviches can best meet this need.

We affirm those portions of the order continuing custody and scheduling visitation and reverse as to the permanent plan. Given that there were no findings of fact which would, in the future, justify termination of parental rights; and given that there was a finding of fact that the natural mother is a fit mother, we can only conclude that a permanent plan leading to termination of the natural mother's rights is inappropriate and that a permanent plan leading to the ultimate return of the child to his natural mother is indicated.

## Background

Damon B., the child who is the subject of the appealed from order, was born in 1977. At the age of seven months he was adjudicated dependent and returned to his mother's custody. When he was 15 months old he was removed from his home and has been in the custody of CYS and in the foster home of the Krepineviche's since shortly thereafter through the present. In 1981 an order substantially identical to the present one was appealed to this court.

This court affirmed the visitation portion of the order, vacated the portion of the order directing that a permanen-

before this court. Given the critical nature of this type of appeal and the changeability of the underlying facts, such a delay is insupportable. The highest priority which these cases are given post-argument only follows, unfortunately, this unconscionable pre-argument lag time. We commend this problem to the attention of this court, the Courts of Common Pleas of this Commonwealth and the Bar of Pennsylvania for their cooperative consideration and solution.

2. The Krepineviches are the foster parents.

cy plan be formulated and remanded for further consideration of permanency planning.[3]

Following that remand a hearing was held and the instant order issued. The natural mother, Joan B. has appealed and briefs have been filed by CYS, foster parents and on behalf of Damon B.

## Scope of Review

Initially, it must be made clear that the order appealed from is not one terminating parental rights, but a custody order mandating planning with termination as a goal. Within the context of a custody case, our appellate scope of review is dependent on what is being examined. As to the lower court's findings of fact, the following scope obtains: if the issue is whether we should reverse the lower court's findings of fact, we must defer the lower court and reverse only where, in making the findings, the lower court abused its discretion." *Commonwealth ex rel. Newcomer v. King,* 301 Pa.Super. 239 at 244, 447 A.2d 630 at 633 (1981) as quoted in *In re Donna W.,* 325 Pa.Super. 39 at 43, 472 A.2d 635 at 637 (1984) (en banc). However, as to the inferences and deductions to be made from those facts—the ultimate conclusions—the scope is different. "Our scope of review in a custody matter is of the broadest type, and we are not bound by deductions or inferences made by a trial court. ... We must exercise an independent judgment based on the evidence and make such an order on the merits of the case as right and justice dictate." *Commonwealth ex rel. Pierce v. Pierce,* 493 Pa. 292 at 295–7, 426 A.2d 555 at 557 (1981) as quoted in *In re Donna W., supra,* 325 Pa.Superior Ct. at 42, 472 A.2d 635 at 637 (1984). This statement is totally consonant with that stated in *Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 478 A.2d 800 (1984).

In disposing of this appeal we conclude that the findings of fact are supported by the evidence and thus do not constitute an abuse of discretion. Accepting, then, the factual findings of the court below, we review, using our

**3.** *In re Damon B.,* 314 Pa.Super. 391, 460 A.2d 1196 (1983).

independent judgment, the conclusions that were drawn from them. We find them to be incorrect.

## Termination Plan

■ In a child custody proceeding the guiding standard is the best interests of the child. *Commonwealth ex rel. Parikh v. Parikh,* 449 Pa. 105, 296 A.2d 625 (1972). In determining what those best interests are, the court should take into account certain considerations; among these are the stated purposes of the Juvenile Act. "To preserve the unity of the family whenever possible ..." 42 Pa.C.S. 6301(b)(1). That policy is echoed in the well-detailed and restrictive requirements that must be met in order for parental rights to be terminated. 23 Pa.C.S. § 2511.[4] None of the factual findings of the court below establish or even relate to any of these requirements. In view of this it is

4. (a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(3) The parent is the presumptive but not the natural father of the child.

(4) The child is in the custody of an agency, having been found under such circumstances that the identity or whereabouts of the parent is unknown and cannot be ascertained by diligent search and the parent does not claim the child within three months after the child is found.

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental right would best serve the needs and welfare of the child.

both unrealistic and undesirable that a permanent plan leading to termination of parental rights be formulated. What then is the alternative?

We note with approval the following statement made by the Pennsylvania Department of Public Welfare. "No child should be allowed to drift in an out-of-home placement without the specific decision that he will be returned to his/her parents or be freed from parental custody and placed for adoption." 10 Pa.Bull. 1046–54. Since termination of parental rights is not a permissible option here, the alternative is to formulate a permanent plan to return Damon B. to his natural mother. Some factors to be evaluated in this regard are laid down in *In re: Donna W.*, 284 Pa.Super. 338 at 346, 425 A.2d 1132 at 1136 (1981) (Hoffman, J.). Among those factors are "... the fitness of the party or parties seeking custody.... The latter consideration is, of course, especially, important when a parent is seeking the return of a dependent child, since in many cases the original finding of dependency and removal of the child resulted from the parent's past unfitness to retain custody." Relevant to this factor is the lower court's finding of fact: "(20) As evidenced by the satisfactory adjustment of the five children in her home, Ms. Brown has alleviated the problems which necessitated their removal and is a fit parent." Also noteworthy are the statements regarding the bonding of children with their foster parents made in *In re: Donna W.*, 325 Pa.Super. 39, 472 A.2d 635 (1984) (en banc).

██ Our conclusions may be simply stated. A child should not exist in a permanent state of limbo in a foster home. When the alternative of termination of parental rights is in no way indicated, the other alternative, return to the natural parent, must be actively planned for. In this case, given the natural mother's current fitness as a parent and the child's advancing age, such a plan should include periodic reevaluation of the desireability of increasing the frequency of visits.

Order affirmed as to custody and visitation and reversed as to the permanent plan leading to termination of parental

rights. A permanent plan leading to the return of Damon B. is to be formulated and implemented and we remand for that purpose. Jurisdiction relinquished.