496 A.2d 1166

**Frank R. HEDDINGS and Sandra J. Heddings**

**v.**

**John STEELE and Edith Steele and Mack Gatz.**

**Appeal of John STEELE and Edith Steele.**

**Frank R. HEDDINGS and Sandra J. Heddings**

**v.**

**John STEELE and Edith Steele and Mack Gatz.**

**Appeal of John and Edith STEELE, Guardian Heidi and Jason Gatz, Betty and Joseph Gatz.**

Superior Court of Pennsylvania.

Argued March 5, 1985.

Filed Aug. 2, 1985.

400

402

Gary T. Harris, Williamsport, for appellants.

Richard A. Vanderlin, Assistant District Attorney, Williamsport, for appellees.

Before CAVANAUGH, WICKERSHAM and ANDER-
SON, JJ.*

WICKERSHAM, Judge:

John and Edith Steele appeal from the orders of the
Court of Common Pleas of Lycoming County denying them
primary custody of their grandchildren, Heidi and Jason
Gatz, presently ages ten and five, respectively.

Once again, this court is called upon to assume the
unenviable role of King Solomon and render judgment as to
the proper custodians of two small children. We must
choose from among maternal and paternal relatives warring
over the future custody of the children. This sad and
troublesome task is made even more difficult because of the
unique facts of this custody/adoption case, which has a long
and confusing history. At various times throughout the
litigation at least five sets of contestants have sought
custody of Heidi and Jason. All the participants in this case
are related to the children, being either grandparents or
aunts and uncles.

Heidi Gatz was born to Janet Steele on December 9, 1974.
In March 1979, Janet Steele married Heidi's father, Mack
Gatz, and on December 11, 1979, Jason Gatz was born. On
October 12, 1982, Janet Steele Gatz died as a result of
multiple stab wounds inflicted by her husband, Mack.
Mack Gatz pleaded guilty to Janet's murder and is present-
ly serving a sentence of incarceration. Heidi witnessed the
death of her mother and both children have undergone, and
presumably continue to undergo, psychiatric counselling
and therapy.

After their mother's death and their father's arrest, Heidi
and Jason were taken to the home of Janet's parents, John
and Edith Steele, appellants herein. Thereafter, custody
petitions were filed by various members of the maternal
and paternal families. By the time of the first hearing in
March 1983, however, the litigants had been narrowed to

* Judge Levy Anderson, Senior Judge, of the Court of Common Pleas of
 Philadelphia County, Pennsylvania is sitting by designation.

Frank and Sandra Heddings, Mack's sister and brother-in-law, and John and Edith Steele, Janet's parents. A hearing was held on the matter over several days in March and April 1983. On May 12, 1983, the lower court issued its opinion and order awarding primary custody of Heidi and Jason to the Heddings. The Steeles mistakenly filed exceptions to the order, which were denied on June 16, 1983. Our court granted appellants' petition to appeal *nunc pro tunc* and the first of the two instant appeals, at No. 1659 Philadelphia 1983, was filed.

Following the May 1983 order, the children went to live with their paternal aunt and uncle, the Heddings. This arrangement proved unsuccessful, however, and on September 28, 1983, a motion to change custody from the Heddings to appellants was filed by appellants. At the November 7, 1983 hearing, the paternal grandparents, Joseph and Betty Gatz, appeared and expressed interest in obtaining custody of the children. The lower court advised them that if they wished to intervene in the proceedings, they should file an appropriate petition within thirty days. On December 14, 1983, the Gatzes filed an adoption petition, to which was attached the children's father's consent. Appellants subsequently filed a motion to quash the adoption petition and the court held a hearing on the question of custody and/or adoption on April 4–5, 1984. The court advised the parties that if the petition for adoption were denied, he would then treat the Gatzes' pleading as though it were a petition for custody. The court also granted the parties' motions that it consider all of the evidence presented at the prior custody proceedings in May 1983, as well as its findings of fact in that case. On May 24, 1984, the lower court issued its second opinion and order denying the Gatzes' petition for adoption, but awarding primary custody of the children to Joseph and Betty Gatz, with visitation to the Steeles. The Steeles timely appealed the order of May 24, 1984, which appeal is docketed at No. 1780 Philadelphia 1984. Upon request, the two appeals were consolidated for determination by this court.

Appellants raise the following issues before us:

1. Did the trial court err in admitting hearsay testimony concerning alleged sexual improprieties between one of the litigants, John Steele and the deceased parent (Janet Steele Gatz), mother of the two children involved in this custody proceeding?

2. Did the trial court err in basing certain of its factual findings upon hearsay testimony?

3. Did the trial court err in making various factual findings which have no evidentiary basis in the proceedings or record?

4. Did the trial court err in permitting procedural irregularities?

5. Did the trial court err in failing to provide any analysis of the record?

6. Did the trial court err in permitting the allegations of incest to so permeate and influence the proceedings, and the Court's thinking as to shift the intended emphasis of the proceedings from the "best interests of the children" to a trial on whether there had been an incestuous relationship between the childrens' deceased mother and her father?

Brief for Appellants at 3. We will begin with the procedural issues.

Appellants correctly note that there were a number of procedural irregularities surrounding the involvement of Joseph and Betty Gatz (the Gatzes) in the "second" phase of this custody case. In particular, (1) the lower court failed to give proper notice to the Gatzes as required by Pa.R.C.P. Nos. 1915.6(b) and 1915.16(b); (2) the Gatzes failed to intervene within thirty days as required by the court's order and failed to file a counterclaim asserting their right to custody as required by Pa.R.C.P. No. 1915.5(b); (3) the lower court treated the Gatzes' motion for adoption as a motion for custody; and (4) appellants' motion to quash the Gatzes' adoption petition was never formally ruled upon by the court.

██ The first alleged defect raised by appellants has no merit because appellants have no standing to request a reversal or remand upon the basis of defective notice given to the Gatzes. Furthermore, appellants do not allege that this procedure caused any prejudicial harm to themselves or the children.

With respect to Appellants' second contention, Pa.R.C.P. No. 126 provides that:

The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.

██ The substantial rights of the parties that must be considered here and which are of paramount importance are the best interests of the children, not the interest of the litigants. *In re Custody of Temos*, 304 Pa.Super. 82, 450 A.2d 111 (1982). The children were not adversely affected by this procedural defect. If the court were to deny the Gatzes custody on the basis of their failure to intervene within thirty days as required by the court's order or for their failure to file a counterclaim, custody of the children would have been decided on the basis of a procedural defect, rather than on the merits. Obviously, this could not have been in the best interests of the children. Similarly, the Rules of Civil Procedure for Custody and Visitation mandate that no judgment may be entered by default in an action for custody and visitation. Pa.R.C.P. No. 1915.9. As the note to this unique rule points out, the determination of the best interests of a child is never a purely legal determination, but requires a multitude of factual determinations.

In any case, appellants were not prejudiced by the Gatzes' failure to file a counterclaim asserting their right to custody. The Gatzes filed an adoption petition which notified appellants of their intention to intervene into the custody of Heidi and Jason. Furthermore, by the court's order dated January 4, 1984, appellants had adequate notice that the

adoption petition was going to be considered as an intervention in the custody action.

Similarly, with respect to their third contention, appellants do not assert that such a procedure was adverse to their own interests or those of the children. Furthermore, as discussed above, appellants had adequate notice as to the nature of the hearing.

As to appellants' fourth contention, it is clear that no prejudicial harm occurred, since the court ultimately denied the Gatzes' Petition for Adoption in its order dated May 24, 1984.

Because we find no evidence of prejudice to either appellants or, more importantly, the children, caused by the procedures utilized by the lower court, we need not reverse and remand on that basis.

■ Appellants also contend that the lower court failed to provide any analysis of the record in its opinions, requiring vacation of its orders. Our court has long required that the lower courts provide us with a complete record and a comprehensive opinion which contains a thorough analysis of the record and specific reasons for its ultimate decision. *Cady v. Weber*, 317 Pa.Super. 481, 464 A.2d 423 (1983); Pa.R.C.P. No. 1915.10—Explanatory Note—1981. The appellate courts require an opinion which demonstrates that the trial judge in a custody case has analyzed the record as a whole and has dealt with significant factual disputes in a manner which will enable the appellate courts to understand the reasons for the decision and to make an intelligent evaluation of the opinion and of the testimony; the judge need not discuss the testimony of each witness or make citations to the transcript. *Sandra L.H. v. Joseph M.H.*, 298 Pa.Super. 409, 444 A.2d 1241 (1982). The lower court's opinion need not discuss all the evidence presented or state why some evidence is regarded as more persuasive. *Id.*

■ With each appealed order in the instant case, the court filed thorough and extensive opinions, containing 43 and 61 paragraphs respectively, recognizing and analyzing

both positive and negative factors with regard to custody of Heidi and Jason. The trial judge has sufficiently presented those factors which he considered important and relevant to his decisions; we find it no more difficult to evaluate the instant opinions than those in any custody case.

Having decided the procedural issues, we now move to the main substantive issue in these appeals: whether the trial court erred in admitting, and basing certain of its factual findings upon, hearsay evidence that appellant John Steele had conducted an incestuous relationship with his daughter Janet Steele Gatz, when Janet was between the ages of 8 and 16. Appellants argue that the evidence of incest, which consisted of the presentation of seven witnesses who testified as to statements allegedly made to them by Janet in her lifetime, was hearsay not falling within any exception to the hearsay rule and, as such, was improperly admitted and considered. On the other hand, the Gatzes argue that the testimony, while hearsay, was properly admitted as a statement against interest or under a general exception to the hearsay rule for statements bearing strong indicia of reliability.

Whether a statement of a decedent is admissible when it is not against the declarant's pecuniary, proprietary, or penal interest, but rather is against the declarant's social interest, is a question of first impression in this court. There appear to be no decisions of this court or of our supreme court holding that declarations against societal interest are either admissible or inadmissible. Therefore, no precedent inhibits our adopting, as part of our common law of evidence, the views urged upon us by either appellants or appellees and the lower court. *See Commonwealth v. Nash*, 457 Pa. 296, 324 A.2d 344 (1974) (penal interest).

The law of this Commonwealth has historically been that declarations against pecuniary or proprietary interest are admissible as an exception to the hearsay rule. *Id.; Commonwealth v. Hackett*, 225 Pa.Super. 22, 307 A.2d 334 (1973); 8 Standard Pennsylvania Practice 2d § 49:24 (1982).

While our courts have rarely expounded on the nature of the "interest" required to make the exception operable, *see Commonwealth v. Honigman*, 216 Pa.Super. 303, 264 A.2d 424 (1970); *Commonwealth v. Antonini*, 165 Pa.Super. 501, 69 A.2d 436 (1949), our state has followed the historical tendency nationwide to define "interest" as pecuniary or proprietary. Annot., 34 A.L.R.Fed. 412 (1977); 29 Am. Jur.2d *Evidence* § 619 (1967); *McCormick on Evidence* § 277 (2d ed. 1972 and 3d ed. 1984); D. Binder, *Hearsay Handbook*, § 29.02 (2d ed. 1983).

█ Recently, however, many courts and/or legislatures have recognized that statements made against interests which are not pecuniary or proprietary in nature can be uttered under reliable circumstances that indicate trustworthiness. As Justice Roberts stated in his concurring opinion in *Commonwealth v. Nash, supra*, 457 Pa. at 308, 324 A.2d at 349, "The limitation of the exception to declarations against pecuniary and proprietary interests is grounded in the belief that they are less likely to be motivated by extraneous considerations and provide less inducement to perjury. This reasoning is unsound." Following the reasoning enunciated in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), our courts now recognize that declarations made against penal interests are also admissible as an exception to the hearsay rule. *Commonwealth v. Colon*, 461 Pa. 577, 337 A.2d 554 (1975), *cert. denied*, 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976); *Commonwealth v. Nash, supra; Commonwealth v. Badger*, 238 Pa.Super. 284, 357 A.2d 547 (1976), *rev'd on other grounds*, 482 Pa. 240, 393 A.2d 642 (1978); *Commonwealth v. Hackett, supra*. As explained in *Commonwealth v. Hackett:* "A distinction which would allow the admission of declarations against insignificant, insubstantial pecuniary interests while excluding declarations which bear the potential of serious penal punishment, would appear to be untenable and without logical support." *Id.*, 225 Pa.Superior Ct. at 27, 307 A.2d at 337. Similarly, declarations against penal interest have now been included as an exception to the

hearsay rule in the majority of states' evidence codes, the Federal Rules of Evidence, and the Revised Uniform Rules of Evidence (1974).

Appellees urge us to find that a declarant's assertion made against his or her social interest likewise merits exception to the hearsay rule. Appellees are not the first persons to espouse this social interest exception. As expressed in the Model Code of Evidence and in the Uniform Rules of Evidence, a statement which was at the time of its making so far contrary to the declarant's interest that it would tend "to make him an object of hatred, ridicule, or disgrace, that a reasonable man in his position would not have made the statement unless he believed it to be true," would not be excluded by the hearsay rule. *See United States v. Dovico*, 261 F.Supp. 862 (S.D.N.Y.1966), *aff'd*, 380 F.2d 325 (2d Cir.1967), *cert. denied*, 389 U.S. 944, 88 S.Ct. 308, 19 L.Ed.2d 302 (1967); Uniform Rules of Evidence Rule 804(b)(3), 13 U.L.A. 215 (1980); D. Binder, *Hearsay Handbook*, § 29.04 (2d ed. 1983).

Following in the pattern of the Uniform Rule, Federal Rule of Evidence No. 804(b), as promulgated by the Supreme Court, included statements tending to make the declarant "an object of hatred, ridicule, or disgrace." This provision was deleted from the rule, however, when enacted by Congress. *See* Fed.R.Evid. 804(b)(3), Historical Note, 28 U.S.C. (1984).

Despite the absence of a societal interest exception in the federal rules, some states have expanded their common law "declarations against interest" exception to include an assertion against a declarant's social interest; moreover, several states have modernized their codified rules of evidence to admit declarations against social interest.[1]

1. *See, e.g.,* Arkansas Uniform Rules of Evidence 804(b)(3); California Evidence Code § 1230; Kansas Code of Civil Procedure § 60–460(j); Maine Rules of Evidence 804(b)(3); Montana Rules of Evidence 804(b)(3); Nevada Revised Statutes § 51.345; New Jersey Evidence Rule 63(10); North Dakota Rules of Evidence 804(b)(3); Texas Rules of Evidence 303(24); Wisconsin Statutes Annotated § 908.045(4).

■ While the federal courts and the majority of state courts that have considered the issue refused to recognize an assertion against a declarant's social interest as an exception to the hearsay rule, upon careful consideration we find appellees' arguments to be persuasive. A declarant's assertion made against his or her social interests may merit exception to the hearsay rule, depending, of course, upon the individual circumstances of each case. For example, "a person is not likely to assert that he is afflicted with genital herpes unless it is true. Such assertion is exceptionally trustworthy and merits exception to the hearsay rule." D. Binder, *Hearsay Handbook*, § 29.05 (2d ed. 1983). Similarly, a statement made to a third party by an unmarried woman who later underwent an abortion that she was pregnant was admitted as a declaration against her social interests, because the "declaration was against the interests of the deceased. It tended to show a state of facts inconsistent with her observance of the rules of chastity. No beneficial purpose of the deceased could be served by the declaration." *State v. Alcorn*, 7 Idaho 599, 609, 64 P. 1014, 1017 (1901). *See also, In re Marriage of Sarsfield*, —— Mont. ——, 671 P.2d 595 (1983) (witness' testimony concerning ex-husband's admissions to her about his sexual abuse of their daughter was admissible as a statement against interest since ex-husband's statements tended to make him an object of hatred, ridicule, or disgrace, so that a reasonable man in his position would not have made the statements unless they were true); *First National Bank in Grand Junction v. Osborne*, 28 Utah 2d 387, 503 P.2d 440 (1972) (witness' testimony concerning party's statement that he was "able to hang one" on a third party was admissible as a statement against interest in that such a statement, if true, would tend to make declarant an object of hatred, etc.); *Muller v. State*, 94 Wis.2d 450, 289 N.W.2d 570 (1980) (deposition of murder defendant's wife taken during custody proceedings between her and her former husband was admissible as statement against interest because it tended, *inter alia*, to make her an object of disgrace).

Examining (and later rejecting) reasons supporting a social interest exception to the hearsay rule, the *Dovico* court stated:

> [D]eclarations of facts which would *tend to* make the declarant an object of hatred, ridicule, or social disapproval, should on reason be admissible as against the social interest of the declarant *. * *. This is particularly so if the notion of untrustworthiness provides the major rationale for the exclusion of hearsay:
>
> > * * * a person will not concede even to himself the existence of a fact which will cause him substantial harm unless he believes that the fact does exist. *If this theory is plausible* there seems no valid reason for not extending the exception to include statements against penal interest and those which would subject the declarant to hatred, ridicule, contempt or *social ostracism.*

*United States v. Dovico, supra* at 872 (footnotes and quotations omitted) (emphasis in original). Human nature being what it is, people are not likely to concede the existence of facts which would make them objects of social disapproval in their community unless the facts are true. The realization of such a consequence is generally a much more powerful influence upon conduct than the realization of legal responsibility for a sum of money, which has long been accepted as a declaration against interest. *See,* Morgan, *Declarations Against Interest,* 5 Vand.L.Rev. 451, 475 (1952); Jefferson, *Declarations Against Interest: An Exception to the Hearsay Rule,* 58 Harv.L.Rev. 1, 39 (1944). As one commentator has stated:

> [T]he restriction to material interests, ignoring as it does other motives just as influential upon the minds and hearts of men, should be more widely relaxed. Declarations against social interests, such as acknowledgements of facts which would subject the declarant to ridicule or disgrace, or facts calculated to arouse in the declarant a sense of shame or remorse, seem adequately buttressed

in trustworthiness and should be received under the present principle.

*McCormick on Evidence,* § 278 (2d ed. 1972) (footnotes omitted).

 In summary, the reason for admitting declarations against interests of any type is that people do not make statements that are disadvantageous to themselves without substantial reason to believe that the statements are true. The question is this: Would a reasonable person in declarant's position have made the assertion against interest unless he or she believed it to be true? If not, we see no logical reason, assuming that it is relevant, to forbid its use as an exception to the hearsay rule, whether the personal interest that is imperiled is classified as pecuniary, proprietary, penal, or social. In other words, we find a declaration against interest to be an out-of-court statement that was made by a non-party who has since died or has become unavailable as a witness; that concerned facts of which declarant had personal knowledge; that involved an interest (whether pecuniary, proprietary, penal, or social) of declarant that was so palpable that it would naturally have been present in the declarant's mind; and finally, that was against such interest. *See* 8 Standard Pennsylvania Practice 2d, § 49:21. Like the supreme court in *Commonwealth v. Nash, supra,* when it discussed declarations against penal interests, we do not intend that every declaration against social interest must be admitted into evidence. Rather, this exception applies only to those hearsay declarations that were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability. *See Chambers v. Mississippi, supra.*

It is clear that questions concerning the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Burch v. Sears, Roebuck and Co.,* 320 Pa.Super. 444, 467 A.2d 615 (1983); *Lewis v. Mellor,* 259 Pa.Super. 509, 393 A.2d 941 (1978). *See Thompson v.*

*Norman,* 198 Kan. 436, 424 P.2d 593 (1967) and *State v. Norgaard,* 201 Mont. 165, 653 P.2d 483 (1982) (trial judge has substantial discretion to exercise in determining whether an assertion against interest qualifies for exception to the hearsay rule, and only manifest abuse of that discretion will warrant reversal on appeal).

In the case at bar, Janet Steele Gatz made various statements concerning numerous incidents of incest and sexual abuse by her father, one of the appellants herein. She also related to numerous witnesses that this conduct resulted in an unwanted pregnancy, which was ultimately terminated by abortion. Upon close examination, we have no doubt that these statements were made against Janet's social interest.[2] The incidents Janet described to the various witnesses were surrounded by such shame, embarrassment, and disgrace that there could have been no self-serving purpose of the statements when made.

Seven witnesses testified under oath and subject to cross-examination as to the nature of the statements made by Janet. Except for the decedent's husband and mother-in-law, the statements were presented through witnesses with no interest in the outcome of the litigation. Additionally, several of the witnesses did not come forward voluntarily with their testimony, but rather, were subpoenaed to appear and testify.

The record also indicates that each individual witness' recollection as to the nature and extent of the incestuous relationship was, for the most part, consistent with each of the other witnesses. All testified that the nature of the incestuous activities was sexual intercourse. Several of the witnesses testified that the decedent mentioned that she was subjected to intercourse with her father beginning at the age of eight, and that the abuse continued until she reached the age of 16, when she moved out of her parents'

2. We note that an argument could be made that the decedent's statements were against her proprietary interests also, since they might have provided a foundation for depriving her of custody of her children. *See Muller v. State,* 94 Wis.2d 450, 289 N.W.2d 570 (1980).

house. Additionally, several of the witnesses testified that the decedent believed her pregnancy at age 16 was as a result of intercourse with her father. Furthermore, although several witnesses recollected similar versions of the decedent's statements, generally the witnesses had not shared their knowledge with the other witnesses and were not aware that the decedent had shared these experiences with one or all of the other witnesses.

The decedent was 18 years old or older when she described these events to her friends. Thus, she presumably had knowledge of the adverse societal impact that could result upon her revelation of such experiences to other individuals. Several of the witnesses testified that the decedent became emotionally and visibly upset when she discussed the subject of being raped by her own father. Such emotion would not likely result from the deliberate creation of a falsehood.

The timing of the decedent's declarations also supports their trustworthiness. The declarant's death occurred on October 12, 1982. The statements uttered by the decedent were made long before they were material to any custody dispute, thereby negating any motive on decedent's part to taint her father's relationship with herself or any of her children. The decedent's statements occurred over a long period of time, beginning in 1974 until her death in 1982. It would be illogical to assume that an individual without deep feelings about her own father's actions would continue such a falsehood for a period extending more than seven years. Furthermore, the events revealed by the declarant originated from first-hand knowledge and experience of those events, further indicating their trustworthiness and competence.

Finally, the testimony presented through admission of decedent's statements related to the moral fitness of a party requesting custody, and was thus both relevant and material in a custody/adoption case. *Brooks v. Brooks*, 319 Pa.Super. 268, 466 A.2d 152 (1983); *In re Custody of Temos, supra; Commonwealth ex rel. Grimes v. Grimes,*

281 Pa.Super. 484, 422 A.2d 572 (1980). Certainly John Steele's incestuous conduct is probative on that issue. Furthermore, the statements were more probative on the point for which they were offered than any other evidence which the proponent could procure through reasonable efforts. There were only two parties to the events described in the testimony, appellant John Steele and the deceased, Janet Gatz. Thus, the only manner in which the Heddings or Joe and Betty Gatz could offer evidence with respect to John Steele's incestuous behavior, other than requesting John Steele to make an admission, was through the hearsay testimony utilized. The interests of justice will best be served by admission of the statements into evidence. It is well settled that the paramount consideration before the trial judge in a child custody proceeding is the best interests and welfare of the child, which includes the child's physical, intellectual, moral, and spiritual well-being. *Brooks v. Brooks, supra; Commonwealth ex rel. Cutler v. Cutler,* 246 Pa.Super. 82, 369 A.2d 821 (1977). Protecting Heidi Gatz, who was eight years of age at the time of the custody proceeding, from possible sexual abuse, is certainly of great interest and importance to the trial court.

In summary, it is clear that the trial judge did not abuse his discretion by allowing admission of the hearsay testimony in order to evaluate the witnesses, weigh their testimony, and to safeguard the best interests and welfare of the children.[3]

Appellants' second issue, that the trial court erred in basing certain of its factual findings on hearsay testimony, is based solely on the premise that the hearsay evidence was incompetent and therefore improperly admitted. Since we have determined that the testimony in question was

**3.** Due to our disposition of this issue on the grounds that the statements were admissible as declarations against decedent's societal interest, we need not and do not decide whether the statements were admissible because they bear strong indicia of reliability and therefore should be admitted as a general exception to the hearsay rule similar to the "catch-all" exception of the Federal Rules of Evidence Rule 804(b)(5).

properly admitted as a declaration against interest, we are not persuaded by appellants' arguments in this regard. Because the hearsay testimony was properly admitted, our decision in *In Interest of Leslie H.*, 329 Pa.Super. 453, 478 A.2d 876 (1984) is easily distinguishable from the instant case. Furthermore, the trial judge recognized the proper weight to be given such testimony, noting that:

> Although the sexual abuse between John Steele, and his daughter, Janet, is remote in time, and although it was only evidenced by testimony permitted over the objections of counsel for John Steele, and although there is no evidence that John Steele, in fact, has ever molested, or in any way acted immorally, with respect to Heidi, the Court nevertheless considers the past conduct as a negative factor with respect to the appropriateness of awarding primary custody to John and Edith Steele.

Lower ct. op., May 24, 1984, at 12. We see no need to discuss this issue further.

Next, appellants take issue with seven findings of fact, claiming that they are not supported by the record.[4] "[I]f the issue is whether we should reverse the lower court's findings of fact, we must defer to the lower court and reverse only where, in making the findings, the lower court has abused its discretion." *Commonwealth ex rel. Newcomer v. King*, 301 Pa.Super. 239, 244, 447 A.2d 630, 633 (1982). *Accord In re: Damon B.*, 338 Pa.Super. 597, 488 A.2d 53 (1985). Upon careful examination of the record, we find that all seven contested findings of fact are supported by competent evidence, and thus do not constitute an abuse of discretion. We must therefore accept them as binding. *Commonwealth ex rel. Robinson v. Robinson*, 505 Pa. 226,

---

**4.** The specific findings of fact contested are the following: Findings of Fact Nos. 12 and 17, Lower ct. op., May 12, 1983, and Findings of Fact Nos. 18, 36, 37, 38, and 41, Lower ct. op., May 24, 1984. These findings generally concern the potential for sexual abuse or immorality in appellants' home, the child-rearing attitudes of appellants, appellants' lack of cooperation with the Heddings and the Gatzes, and appellants' bitterness and resentment towards Mack Gatz and his family.

478 A.2d 800 (1984); *Agati v. Agati,* 342 Pa.Super. 132, 492 A.2d 427 (1985).

Finally, appellants argue that the emphasis of the trial shifted from the best interests of the children to whether there had been an incestuous relationship between Janet and her father. Appellants contend that although a trial court must necessarily and rightfully be concerned with the morality or immorality of any proposed custodian of children, it cannot and should not allow any single factor or piece of evidence to so influence the proceedings and the court's thinking so as to lose sight of what is truly in the best interests of the children. Brief for Appellants at 29. We agree with appellants' observation, but upon consideration, we do not believe that the court ever lost sight of the best interests of Heidi and Jason.

In both opinions, the court expressly recognized that the sole issue and paramount concern in a child custody case, such as the instant case, is the best interests of the children. Lower ct. op., May 12, 1983 at 2; lower ct. op., May 24, 1984 at 7. With this paramount concern in mind, the court then thoroughly investigated the facts and made a comprehensive analysis of the record. The trial court did consider the incest testimony, but accorded to it the proper weight, and as discussed earlier, clearly considered it to be only one factor, among many other relevant factors, in making its decision. The court also heard considerable contrary testimony concerning the incest issue from a number of witnesses, including John and Edith Steele and several of their children. The court's opinions contained 43 and 61 findings of facts respectively, indicating that it considered many relevant factors before awarding custody to the Heddings/Gatzes. We do not find that the court was improperly prejudiced so as to shift the emphasis of the proceedings from the best interests of Heidi and Jason, to a trial solely concerned with the incestuous relationship between Janet and John Steele. The trial court has presented us with two opinions reflecting a thorough and deeply concerned analysis of the record as a whole. It has suffi-

ciently presented in these opinions those factors which it considered important and relevant in tipping the balance in favor of an award of custody to the Heddings, and later, the Gatzes.

■ Because we find the trial court's incontrovertible factual findings support its factual conclusions, we may not interfere with those conclusions unless they are unreasonable. *Commonwealth ex rel. Robinson v. Robinson, supra,* (only where it is constrained to hold that there was a gross abuse of discretion should an appellate court interfere with the custody decisions of the trial judge). The record herein, taken as a whole, amply supports an award of custody to the Gatzes, and thus, there was no abuse of discretion.

Orders affirmed.

CAVANAUGH, J., files a concurring opinion.

CAVANAUGH, Judge, concurring:

I join in Judge Wickersham's exemplary opinion which well decides this troublesome custody case. However, since apparently this is a case of first impression in Pennsylvania on an important evidential matter, i.e., the scope of the exception to the hearsay rule for an assertion against interest, I take this opportunity to offer my view as to the proper formulation of the exception.

An out-of-court assertion, offered to prove its truth, should be excepted to the hearsay rule if (1) the declarant is unavailable at trial, and (2) the assertion was at the time of its making so far contrary to the declarant's interest that a reasonable person in his position would not have made the assertion unless he believed it to be true.

It doesn't matter whether the offended personal interest be labeled pecuniary, proprietary, penal, social, or by some other descriptive term. The important thing is that, taking into consideration the circumstances in which the assertion was made, it be so self-damaging that a reasonable declarant would not have made it unless he was convinced that it

420

was true. This indicium of reliability makes such an assertion substantially more trustworthy than hearsay in general, thus meriting exception to the hearsay rule.

This inclusive definition of the hearsay exception for an assertion against interest is consistent with views expressed by many leading commentators on the law. *See* American Law Institute, *Model Code of Evidence*, Rule 509; National Conference of Commissioners on Uniform State Laws. *Uniform Rules of Evidence* (1974 version), Rule 804(b)(3); Binder, *The Hearsay Handbook* (Second Edition) § 29.04; *Jones on Evidence* (Sixth Edition) § 9:9; Jefferson, *Declarations Against Interest: An Exception to the Hearsay Rule* (1944) 58 Harvard Law Review 1; Morgan, *Declarations Against Interest* (1952) 5 Vanderbilt Law Review 451.