J-A10017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LARISSA C. CONNELLY[1] | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS P. CONNELLY, JR., | : | |
| | : | |
| Appellant | : | No. 2341 EDA 2020 |

Appeal from the Order Entered September 16, 2020
In the Court of Common Pleas of Chester County Civil Division at No(s):
No. 2020-02419-CU

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 15, 2021**

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Recent changes to our Rules of Appellate Procedure provide that, "[i]n an appeal of a custody action where the trial court has used the full name[s] of the parties in the caption, upon application of a party and for cause shown, an appellate court may exercise its discretion to use the initials of the parties in the caption based upon the sensitive nature of the facts included in the case record and the best interests of the child."  Pa.R.A.P. 904(b)(2); **see also** Pa.R.A.P. 907 ("Unless an appellate court exercises its discretion, upon application of a party and for cause shown, to use the initials of the parties in an appeal of a custody action, the prothonotary of the appellate court shall docket an appeal under the caption given to the matter in the trial court."). These changes to our Rules were approved on October 22, 2020 and became effective January 1, 2021.  In this case, no party applied to this Court to use initials in the caption.  Hence, in the absence of a request, we use the parties' names in the caption "as they appeared on the record of the trial court at the time the appeal was taken."  Pa.R.A.P. 904(b).  We will, however, refer to the minor involved in this custody dispute by her initials, or as "the Child" throughout our decision so as to protect her identity.

Appellant, Thomas P. Connelly, Jr. ("Father"), appeals *pro se* from an order entered on September 16, 2020 pursuant to the Child Custody Act ("the Act"), 23 Pa.C.S.A. §§ 5321-5340, which purported to modify an existing custody order with respect to his daughter, O.C. ("Child"), born in February 2016. Upon review, we quash this appeal because the underlying custody orders entered in this case were not final and appealable. Accordingly, we remand for further proceedings.

Our review is limited to the procedural history of this case, together with the allegations set forth within the pleadings filed by the parties. The certified record does not include transcripts of proceedings before the trial court or hearing officers, nor any opinion reporting the factual findings or custody-related conclusions of law drawn therefrom.

Larissa C. Connelly ("Mother") filed a complaint in custody on March 5, 2020 seeking primary physical custody,[2] and her counsel appeared of record on that date. Father proceeded *pro se*. Mother's complaint did not include any factual assertions. Rather, it baldly stated "[t]he best interest and permanent welfare of the child will be served by granting Mother and Father

---

[2] The Act defines "physical custody" as the actual physical possession and control of the child and "primary physical custody" as the right to assume physical custody of the child for the majority of time. 23 Pa.C.S.A. § 5322(a).

shared legal custody[3] with Mother [having] primary physical custody and Father having partial physical custody."[4]  Complaint, 3/5/20, at 2 (unpaginated).  The parties attended a mediation session on April 9, 2020 but did not enter into a written custody agreement.  After rescheduling a conciliation conference from April 16, 2020 to July 2, 2020, Father failed to attend the July 2, 2020 conciliation conference before Hearing Officer Tracy L. Christman.[5,6]  Immediately after the conciliation conference, Hearing Officer Christman submitted a recommended custody order to the trial court,[7] which

---

[3] The Act defines "legal custody" as the right to make major decisions on behalf of the child, including, but limited to, medical, religious, and educational decisions.  It defines shared legal custody as the right of more than one individual to legal custody of the child.  23 Pa.C.S.A. § 5322(a).

[4] The Act defines "partial physical custody" as the right to assume physical custody of the child for less than a majority of the time.  23 Pa.C.S.A. § 5322(a).

[5] The use of alternative hearing procedures before a conciliator is authorized in partial custody matters pursuant to Pa.R.C.P. 1915.4-3(a).

[6] The July 2, 2020 conciliation conference was a non-record proceeding pursuant to Pa.R.C.P. 1915.4-3; therefore, no notes of testimony were taken or are part of the certified record.  Moreover, Hearing Officer Christman did not prepare a report of her factual findings following this conciliation conference.

[7] The trial court docket does not reflect that Hearing Officer Christman's recommendation was sent to the parties.  We also note that Father was not present at the July 2, 2020 conciliation conference.  *See Brown v. Cain*, 505 A.2d 300, 302 n.3 (due process attaches if, on the basis of the conference and without a hearing, the procedures allowed the trial court to issue an order which was effective immediately, even if the order, once effective, was then subject to exceptions and a hearing); *Heddings v. Steele*, 496 A.2d 1166,
*(Footnote Continued Next Page)*

the trial court signed on July 7, 2020,[8] entered on the docket on July 8, 2020, and sent to the parties on July 10, 2020 (the "July order").[9]  Pursuant to this order, Mother and Father shared legal custody, Mother received primary physical custody, and Father retained partial physical custody with special instructions.  Trial Court Order, 7/10/20, at 2.  Father exercised partial physical custody with Child every other weekend from Friday at 6:30 p.m. until Sunday at 5:00 p.m. and every Wednesday from 4:30 p.m. to 6:30 p.m. *Id.*  The trial court required Father to submit to testing with Soberlink[10] during custodial periods and to a psychological evaluation within 30 days of the July order.  *Id.*  The order provided that Child shall have "reasonable uninterrupted telephone contact with the non-custodial party."  *Id.* at 3.

---

1170 (Pa. Super. 1985) (Pa.R.C.P. 1915.9 prohibits default judgments in custody actions), *affirmed* 526 A.2d 349 (Pa. 1987).

[8] The trial court judge who signed and entered this order was the Honorable Analisa Sondergaard.

[9] While the parties and trial court refer to different dates, the date of entry to which we shall refer is the date on which the docket reflects that copies were sent to the parties – here, July 10, 2020.  *See* Pa.R.A.P. 108(b).

[10] We take judicial notice that Soberlink is a company that provides a remote alcohol monitoring system that allows a user to observe, detect, and document that user's blood alcohol content.  It focuses specifically on remote monitoring for use in addiction treatment and family law.  *See* https://www.soberlink.com (last visited 9/24/21).

Within the July order, the custody conciliator noted that the order was recommended by the conciliator but not agreed to by the parties.[11] *Id.* Moreover, the July order included within its terms a "*Littman*"[12] notice which stated:

> The Custody Conciliator has determined that this recommendation results in a change in **primary** custody that **is not agreed upon** by the parties. The Conciliator has advised the parties that the objecting party shall file any request for a stay of the entry of the recommended order within five [] days of the conciliation conference and, if no stay is filed within five [] days, the recommended order shall be entered. The parties are further notified that if no demand for trial is filed within [90] days following the conciliation conference, the recommended order shall become a final order of court. The objecting party shall

_____

[11] The Court of Common Pleas of Chester County certified to the Domestic Relations Procedural Rules Committee of the Supreme Court of Pennsylvania that its proceedings are conducted in accordance with Pa.R.C.P. 1915.4-3. Certification of Judicial District Alternative Hearing Procedures (filed with Domestic Relations Procedural Rules Committee of Pennsylvania Supreme Court), 1/30/19, at 1. Under Pa.R.C.P. 1915.4-3, "if an agreement is not finalized by the conclusion of the [initial non-record proceeding], the conference officer shall promptly notify the court that the matter should be listed for trial." Pa.R.C.P. 1915.4-3(a). Pa.R.C.P. 1915.4-3. Thus, under the Rules of Civil Procedure, the hearing officer's recommendation could not become an order of court absent a *de novo* trial before the trial court. *See* ***E.D. v. D.B.***, 209 A.3d 451, 461-462 (Pa. Super. 2019).

[12] The July order's reference to a ***Littman*** notice alludes to our decision in ***Littman v. Van Hoek***, 789 A.2d 280 (Pa. Super. 2001), which held that, pursuant to both statutory law and our Supreme Court's mandate, a hearing officer's authority to hear custody matters extends to partial physical custody only; a hearing officer may not make determinations establishing primary physical custody. ***Id.*** at 282, *citing* ***Van Dine v. Gyuriska***, 713, A.2d 1104, 1105 (Pa. 1993) ("a trial judge and not a master or hearing officer may make determinations related to primary physical custody matters.").

follow the procedure set forth in Chester County Rule 1915.5.B(f)(2) with regard to seeking a stay or custody trial.

*Id.* at 2 (emphasis added).[13]  Beside the signatures of the Custody Conciliator and the trial court judge, the July order included the following notice:

> **NOTICE: UNLESS A DEMAND FOR TRIAL HAS BEEN FILED, THIS ORDER SHALL BECOME A FINAL ORDER OF THE COURT WITHIN 90 DAYS OF THE MOST RECENT CONCILIATION CONFERENCE.**

*Id.* at 3.[14]  Pursuant to the terms appearing in the notice, the July order would become final 90 days after the July 2, 2020 conciliation conference - *i.e.*,

---

[13] Again, because Father was not present at the July 2, 2020 conciliation and the trial court docket does not reflect that Father was served with Hearing Officer Christman's recommendation after the conference, it is unclear from the record how the Conciliator advised Father of his rights and obligations regarding the recommendation.

[14] Rule 1915.4.A. of the Chester County Local Rules of Civil Procedure ("C.C.R.C.P." or the "local rules") requires temporary custody orders to include a notice that reads:

> **NOTICE: UNLESS A DEMAND FOR TRIAL, A CERTIFICATE OF TRIAL READINESS AND A PRE-TRIAL STATEMENT HAVE BEEN FILED, THIS ORDER SHALL BECOME A FINAL ORDER OF THE COURT WITHIN 90 DAYS OF THE MOST RECENT CONCILIATION CONFERENCE.**

C.C.R.C.P. 1915.4.A.(b)(2).  The notice stamped on the July order varied from the dictates of the local rule as it failed to notify Father that he needed to file a certificate of trial readiness and pre-trial statement.  Instead, the notice appearing on the July order advised Father simply to file a demand for trial if he did not want the July order to become final.  We will discuss the implications of this deficient notice, coupled with Father's timely demand for trial, more fully below.

September 30, 2020 – "unless a demand for trial has been filed." **See** Trial Court Order, 7/10/20, at 3.

The July order established the custody arrangement between Mother and Father and, as such, purported to resolve the custody dispute raised in Mother's complaint filed on March 5, 2020. The July order did not, however, include any recitation of factual findings or assessment of the 16 custody factors outlined in 23 Pa.C.S.A. § 5328(a).[15] The trial court docket reflects that, on September 28, 2020, Father filed a timely demand for trial on issues raised at the July 2, 2020 conciliation conference and addressed in the Court July order. Despite Father's demand, the trial court entered the July order as final on September 30, 2020.

In the meantime, on August 31, 2020, Mother filed a petition for special relief[16] and requested an expedited hearing. Within her petition, Mother asked

_____

[15] Pursuant to 23 Pa.C.S.A. § 5323(a) and (d), a trial court that issues an order establishing any form of custody must assess the 16 factors found in section 5328(a) prior to the deadline for a litigant to file a notice of appeal. **C.B. v. J.B.**, 65 A.3d 946, 955 (Pa. Super. 2013); **see also** 23 Pa.C.S.A. §§ 5323(a), (d) and 5328(a). The failure to expressly consider all of the § 5328(a) factors constitutes an error of law. **M.J.M. v M.L.G.**, 63 A.3d 331, 336 (Pa. Super. 2013), citing **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa. Super. 2011). Moreover, a trial court's custody decision must be supported by competent evidence of record, **T.B. v. L.R.M.**, 753 A.2d 873, 881 (Pa. Super. 2000) (en banc), and expressed through a comprehensive opinion containing an exhaustive analysis of the record and specific reasons for the court's ultimate decision. **Id.** at 890.

[16] Without an accompanying petition to modify custody, a petition for special relief seeks only a temporary alteration of custody under appropriate
*(Footnote Continued Next Page)*

the trial court to modify Father's partial physical custody time to shorter periods of supervised physical custody.[17]  To support her petition for special relief, Mother cited several allegations concerning events occurring prior to the entry of the original custody order, including her personal fear of Father and Father's consumption of alcohol.[18]  *See* Petition for Special Relief, 8/31/20.

_____

circumstances.  **Steele v. Steele**, 545 A.2d 376, 378 (Pa. Super. 1988) (trial court "could not act to modify the visitation [o]rder permanently without a petition to modify"); **cf. J.M. v. K.W.**, 164 A.3d 1260, 1270 (Pa. Super. 2017) (*en banc*).  Temporary relief pursuant to Pa.R.C.P. 1915.13 is appropriate only in circumstances where "(1) there are no custody agreements such that the interim order is a reasonable and necessary stopgap during litigation; (2) the order addresses emergency situations and protects the child(ren) until a final hearing can be held and permanent custody be awarded; (3) the order preserves the well-being of the child(ren) involved while the parties prepare to resolve more permanently the question of where and/or with whom the children should remain; or (4) where the conduct of a party warrants an order designed to protect the child(ren) until such time as that party corrects the worrisome behavior."  **E.D.**, 209 A.3d at 465.  Temporary orders are thus limited in scope and duration with an identified date or event triggering expiration.  Temporary custody orders do not ordinarily become permanent or final in the absence of comprehensive adjudication pursuant to a petition to modify custody.

[17] The Act defines "supervised physical custody" as custodial time during which an agency or an adult designated by the court or agreed upon by the parties monitors the interaction between the child and the individual with those rights. 23 Pa.C.S.A. § 5322(a).

[18] The "only circumstances relevant to reconsideration are those that have occurred since the entry of the original custody order.  [The consideration of facts existing prior to or at the time of the prior order leads to re-litigation] of issues already determined."  **Snarski v. Krincek**, 538 A.2d 1348, 1354 (Pa. Super. 1988).

Mother and Father attended a conciliation conference before Hearing Officer Richard E. Lombardi on September 9, 2020.[19] Both parties were represented by counsel at the conference as Father's counsel, Paul S. Peters III, entered his appearance on September 9, 2020.[20] On the same day, Father's counsel filed a response to Mother's petition for special relief contesting most of her allegations. Specifically, Father (1) contested the relevance of Mother's assertions; (2) demanded strict proof thereof; (3) asserted that Mother misrepresented facts within her petition; (4) challenged the propriety of the allegations within Mother's petition; and (5) averred that none of Father's actions impacted his "parenting time" with Child. Father's Response in Opposition to Mother's Petition for Special Relief, 9/9/20.

Immediately after the conference hearing, Hearing Officer Lombardi submitted a recommended custody order to the trial court,[21] which the trial

_____

[19] As with the July 2, 2020 conciliation conference, no notes of testimony were prepared during the September 9, 2020 non-record conciliation conference, and Hearing Officer Lombardi did not generate a report of his factual findings.

[20] The trial court docket reflects that Attorney Peters represented Father from September 9, 2020 through December 3, 2020. *See* Trial Docket Entry, 12/3/20. While Attorney Peter's petition to withdrawal was dated October 30, 2020, *see* Petition to Withdraw, 12/3/20, the petition was not filed, and thus not effective, until December 3, 2020. After December 3, 2020, Father proceeded *pro se*.

[21] As with the July recommendation by Hearing Officer Christman, the trial court docket does not reflect that this recommendation by Hearing Officer Lombardi was served on the parties.

court signed on September 11,[22] entered on the docket on September 14, 2020, and sent to the parties on September 16, 2020 (the "September order").[23]

Pursuant to the September order, entitled "Interim Custody Order," the July order remained in effect with several modifications (adopted in the September order) that restricted Father's custodial time.[24]  Trial Court Order, 9/16/20.  Father's custodial time was limited to supervised physical custody every other Saturday from 10:00 a.m. to 6:30 p.m. and, if Father notifies Mother at least 72 hours in advance, on Wednesdays from 4:30 p.m. to 6:30 p.m.  *Id.*  Father bore the costs of supervision, and if the parties could not agree on a supervisor, Father was required to use Child First Family Services.  *Id.*  The September order also directed the parties to establish accounts at

---

[22] The trial court judge who signed and entered this order was the Honorable Katherine B.L. Platt.

[23] We shall treat the effective date of the September order as September 16, 2020, the date on which the docket reflects that copies were sent to the parties.  *See* Pa.R.A.P. 108(b).

[24] To impose restrictions or safety provisions in a custody order, a trial court must make a specific finding that, without such restrictions, a child will be adversely affected by the custodial award.  *J.R.M.*, 33 A.3d at 653 (citation omitted); *see also* 23 Pa.C.S.A. § 5323(e); Pa.R.C.P. 1915.10(b)(2).  A party seeking restrictions on partial custody must show that the restriction is "the least intrusive restriction reasonably necessary to assure the child's welfare." *Schwarcz v. Schwarcz*, 548 A.2d 556, 571 (Pa. Super. 1988) (citation omitted).

www.OurFamilyWizard.com[25] for a one-year subscription and thereafter solely communicate through that website except in emergency matters "regarding the child that must be acted upon in less than 24 hours." *Id.* The September order restricted Father's "reasonable telephone contact" with Child to "one completed telephone call per day not to exceed fifteen minutes in length." *Id.* Lastly, the September order prohibited Father from consuming alcoholic beverages during or immediately prior to exercising his supervised physical custody. *Id.*

Unlike the July order, the September order did not include a "*Littman*" notice or state whether the parties mutually agreed to its provisions. *See* Trial Court Order, 7/10/20, at 2 and 3. The September order included the following stamped notice:

> **Notice: Unless a demand for trial has been filed, this order shall become a final order of the court within 180 days of the filing of the complaint or petition for modification or 90 days of the most recent conciliation conference, whichever is earlier.**

---

[25] We take judicial notice that www.OurFamilyWizard.com is a web-based and cellular telephone mobile application that provides co-parenting services through a secure platform including, *inter alia*, various communication methods with unalterable records, shared calendars, and tools to transmit payments, track expenses, coordinate parental decision making, and negotiate parenting time modification requests. *See* https://www.ourfamilywizard.com (last visited 9/24/20).

Trial Court Order, 9/16/20.[26] The plain language of the notice stamped on the September order made clear that, **unless a demand for trial was filed**, the September order would become final at the **earliest** of (1) 180 days from the filing of the March 3, 2020 complaint – *i.e.*, September 1, 2020; (2) 180 days from the filing of the petition for modification – no petition for modification was filed; or (3) 90 days from the September 9, 2020 conciliation conference – *i.e.*, December 8, 2020.[27] ***Id.*** (emphasis added).

The September order modified the custody arrangement between Mother and Father and, as such, purportedly resolved the custody issues raised in Mother's petition for special relief filed on August 31, 2020. The

---

[26] To reiterate, local rule C.C.R.C.P. 1915.4.A requires the notice to state:

> **NOTICE: UNLESS A DEMAND FOR TRIAL, A CERTIFICATE OF TRIAL READINESS AND A PRE-TRIAL STATEMENT HAVE BEEN FILED, THIS ORDER SHALL BECOME A FINAL ORDER OF THE COURT WITHIN 90 DAYS OF THE MOST RECENT CONCILIATION CONFERENCE.**

C.C.R.C.P. 1915.4.A.(b)(2). The notice included on the September order varied from the local rule requirement. Specifically, it did not inform Father of the need to file a certificate of trial readiness or a pre-trial statement, but merely advised him to file a demand for trial if he did not want the September order to become final.

[27] Based on the terms of the notice within the September order, the earliest date triggering finality would be September 1, 2020, 180 days after the complaint was filed. The plain language of the notice is, thus, nonsensical because it provides that the September order would become final before it was ever entered (September 16, 2020) and before the conciliation conference was even conducted (September 9, 2020). The only rational date on which the September order could become final under its own terms is December 8, 2020.

order limiting Father's custodial time to shorter periods of supervised physical custody and implemented further restrictions on Father's custodial award. As with the July order, the September order did not include factual findings or address the mandatory Section 5328(a) custody factors before stating these custody modifications.

Father's counsel filed a demand for trial on September 28, 2020. The filing expressly identified both the July 2, 2020 and September 9, 2020 conciliation conferences as relevant to the requested proceedings. *See* Demand for Trial, 9/28/20. Most importantly, the demand for trial was timely filed under the terms included within the July order and September order. Because Father lodged a timely demand for trial on the issues raised in Mother's complaint for custody and her petition for special relief, the trial court should have scheduled a trial on the custody issues raised by the parties and was precluded from entering either the July order or the September order as final without conducting further proceedings.

Neither party nor the trial court took further action following Father's demand for trial. Subsequently, Father's counsel failed to perfect the demand for trial by filing a certificate of trial readiness or pre-trial statement.[28] The trial court did not notify Father, or his counsel, of the need to file a certificate

_____

[28] Notwithstanding the critical procedural defects within the notices provided to Father in the July and September orders, our review of the record and local rules reveal that the certificate of trial readiness and pre-trial statements were due within the time period in which Attorney Peters represented Father.

of trial readiness or a pre-trial statement, nor did it schedule a date for trial. Notably, the trial court docket does not show the September order being entered as a final order. Father filed his notice of appeal on December 10, 2020.[29]

On January 15, 2021, this Court entered a *per curiam* order directing Father "to show cause within ten [] days of the date of this order as to the finality or appealability of the order." *Per Curiam* Order, 1/15/21. We noted that the September order, entitled "Interim Custody Order," stated it would become a final order **unless a trial demand is made** and that Father filed a demand for trial on September 28, 2020. Hence, it appeared that the September order was interlocutory and not appealable. ***Id.***, *citing* **G.B. v. M.M.B.**, 670 A.2d 714 (Pa. Super. 1996) (emphasis added). Father filed a timely *pro se* response. On January 27, 2021, this Court entered a *per curiam* order discharging the rule to show cause, but advised Father that "this is not a final determination as to the propriety of the appeal" and that finality and appealability "may be revisited by the panel assigned to decide the merits of this case[.]" *Per Curiam* Order, 1/27/21.

---

[29] Pursuant to Pa.R.A.P. 1925(a)(2), Father was required to file his concise statement of errors complained of on appeal with his notice of appeal. Father, however, filed his notice of appeal on December 10, 2020, and his concise statement on December 11, 2020. **See** Trial Court Docket Entry, 12/11/20. Nevertheless, we decline to dismiss Father's appeal on this basis because his short delay did not prejudice any other party. **See In re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009). The trial court issued its 1925(a) opinion on January 14, 2021.

Before examining Father's claims, we first consider our jurisdiction over this appeal. *See K.M.G. v. H.M.W.*, 171 A.3d 839, 841 (Pa. Super. 2017) ("This Court may examine appealability *sua sponte* because it affects our jurisdiction over the matter."). We previously explained:

> Under Pennsylvania law, an appeal may be taken from: (1) a final order [] (Pa.R.A.P. 341); (2) an interlocutory order as of right (Pa.R.A.P. 311); (3) an interlocutory order by permission (Pa.R.A.P. 312, 1311; 42 Pa.C.S.A. § 702(b)); or (4) a collateral order (Pa.R.A.P. 313). The question of the appealability of an order goes directly to the jurisdiction of the Court asked to review the order.

*Moyer v. Gresh*, 904 A.2d 958, 963 (Pa. Super. 2006) (citation omitted). Generally, a final order disposes of all claims of all parties. Pa.R.A.P. 341(b)(1). We analyze the finality of child custody orders differently, however, because of their "significant, important[,] and immediate impact upon the welfare of children," *G.B.*, 670 A.2d at 718, and the patent reality that "all custody awards are temporary insofar as they are subject to modification by an ensuing court order anytime that it promotes the child's best interest." *J.M.*, 164 A.3d at 1268. Therefore, a custody order is considered final and appealable only if it is both: "(1) entered after the court has completed its hearing on the merits; and (2) intended by the court to constitute a complete resolution of the custody claims pending between the parties." *G.B.*, 670 A.2d at 720. We analyze each prong of this analysis in turn.

First, in order to constitute a final custody order, the court must complete a hearing on the merits before entering the order. **G.B.**, **supra**. This does not require a hearing at any particular stage so long as the requisite hearing is held before the final order becomes effective. **Brown**, 505 A.2d at 302-303; **see also Plowman v. Plowman**, 597 A.2d 701, 706 (Pa. Super. 1991) (there must be a full evidentiary hearing before a trial court may allow "even a *de facto* modification").

If a trial court so chooses and properly certifies, it may employ an alternative custody procedure for partial custody matters. Pa.R.C.P. 1915.4-1. Within these procedures, outlined in Pa.R.C.P. 1915.4-2 and 1915.4-3, a conference may be held before a conciliator who then issues a report and recommendations for a custody order to the trial judge. However, "[w]hen a party is not willing to accept the results of the conference proceeding and [o]rder by the court based solely on those proceedings, the parties are entitled to a hearing *de novo*" which "requires all matters to be litigated, regardless of their having previously been reviewed at conference[.]" **Ashford v. Ashford**, 576 A.2d 1076, 1079 (Pa. Super. 1990). This *de novo* hearing may not be a "rubber stamp approval of the recommendation of the hearing officer," *id.*, especially in light of the trial court's duty to conduct an independent review of the record to determine whether the hearing officer's findings and recommendations were appropriate. **K.B. v. M.F.**, 247 A.3d 1146, 1154 (Pa. Super. 2021). Where a litigant believes a merits hearing

before the trial judge is necessary, in light of the best interests of a child in custody disputes, "we must err on the side of caution and more extensive review rather than encourage or permit superficial and inadequate procedures." *Ashford*, 576 A.2d at 1079. To deny a party the right to a *de novo* hearing denies that party due process. *A.H. v. C.M.*, 58 A.3d 823, 827 (Pa. Super. 2012).

When determining whether the trial court completed the hearings on the merits, "we emphasize, a full inquiry is essential to determine what serves a child's best interest; all pertinent facts surrounding the contesting parties must be fully explored and developed" with the paramount focus being on the best interest of the child involved. *T.B.*, 753 A.2d at 890 (citation omitted). To that end, a trial court must consider and schedule additional proceedings on the merits when the allegations raised or the facts of record put the trial court on notice of the need to develop an issue. *See id.* at 892 (additional merit hearings were required "once the [trial] court was alerted to the underdeveloped nature of the evidence"); *id.*, at 894 (trial court was put on notice by exceptions that hearing officer's analysis was lacking and additional merit hearings were required to adequately develop the record); *Sawko v. Sawko*, 625 A.2d 692, 695 (Pa. Super. 1993) (allegations warranted further investigation into father's behavior because of the threat to the child's well-being); *Ashford*, 576 A.2d at 1080 ("because of the requirement that all custody hearings be full and comprehensive and all witnesses be heard who

can contribute to that understanding," further merit hearings were required concerning the "numerous disturbing allegations" about a party's associations and environment).

Here, the trial court never conducted a hearing on the merits. Moreover, neither the trial court nor the hearing officers issued findings of fact or conclusions of law that constituted a full inquiry into the relevant circumstances affecting the best interest of Child. **T.B., supra.** Importantly, the trial court expressly stated in both its July and September orders that the timely filing of a demand for trial would preclude entry of the orders as final and trigger additional proceedings. Father filed a demand for trial, but no adjudicatory proceedings took place before the trial court. Father's demand for trial, the serious nature of the allegations within Mother's petition for special relief, and the absence of a best interests analysis within the certified record put the trial court on notice of the need to develop a more comprehensive record through a hearing on the merits. In the absence of a comprehensive hearing under these circumstances, we are unable to conclude that the orders entered by the trial court constituted final and appealable orders that validly invoke our appellate jurisdiction.[30]

---

[30] Additionally, several factors raise serious doubt as to whether the September order was ever even intended to serve as a final order. The order was entered after the filing of a petition for special relief, which ordinarily allows only temporary modification of a custody order and does not support the permanent entry of a custodial award. The order is entitled "interim
*(Footnote Continued Next Page)*

Moreover, the Court of Common Pleas of Chester County certifies that its local rules comport with Rule 1915.4-3 of the Pennsylvania Rules of Civil Procedure.[31] Under Rule 1915.4-3, Father was entitled to a *de novo* custody trial if the conciliation conferences did not result in an agreement between Mother and Father. **See** Pa.R.C.P. 1915.4-3. The record confirms that the trial court did not conduct hearings on the merits of the custody claims addressed in either the July or the September order. For each of these reasons, the trial court's orders fail to satisfy the first prong of the test determining the finality and appealability of a custody order.

Here, the orders entered by the trial court do not satisfy the criteria for treatment as final and appealable rulings. Because the orders remain interlocutory, they are not appealable, and we are without jurisdiction to reach the merits of this case. Thus, we are constrained to quash Father's appeal.

Appeal quashed. Case remanded for further proceedings. Jurisdiction relinquished.

---

custody order" and the trial court described it as an interlocutory order in its 1925(a) opinion filed with this Court. Lastly, there is no trial court docket entry designating the September order as final.

[31] Our analysis of the proceedings in this case suggests that the procedures followed by the trial court did not fully comport with the requirements of Rule 1915.4-3 of the Pennsylvania Rules of Civil Procedure.

- 19 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/15/2021