589 A.2d 1160

**Nina JOHNSON, Appellee,**

v.

**Russell DIESINGER, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 5, 1990.

Filed April 24, 1991.

42

Frederick C. Horn, Lansdale, for appellant.

Neil Hurowitz, King of Prussia, for appellee.

Before CAVANAUGH, OLSZEWSKI and FORD ELLIOTT, JJ.

CAVANAUGH, Judge:

Russell Diesinger, the father of two girls, ages 4 and 6 at the time of trial (6 and 8 now), appeals from an order granting partial custody rights to the children's maternal grandmother pursuant to 23 Pa.C.S.A. § 5311. The statute provides visitation or partial custody to grandparents after the death of the child's parent. Because we feel the extent and frequency of custody granted by the trial court are excessive and amount to an abuse of discretion, we vacate and remand for further proceedings consistent with this opinion.

Appellee, the maternal grandmother, testified that before her daughter's death, she and her husband shared a close relationship with her daughter and appellant. She characterized her relationship with her grandchildren as "very, very close." Her entire testimony regarding her relationship with her grandchildren before the final illness of her daughter was:

I was there with [appellant] to bring them home from the hospital. I was there for their christening. I came down for their birthdays. [My husband] and I drove down to be with them Christmas Day.

She also testified that at various times when her daughter was hospitalized with cancer she moved into the home of appellant and her daughter pursuant to her daughter's wishes. She cared for the children and the household on several occasions during the seven months before her daughter's death and then continuously for approximately five months afterward while appellant was mourning for his wife. Thereafter appellee moved back into her own home and for a time appellant allowed visits to continue. Once appellant met a woman and planned to remarry, relations with appellee turned sour. Appellant began either refusing or limiting visitation and finally told appellee not to visit until after the wedding. Appellee brought this action for partial custody.

The trial court granted primary physical custody to appellant with the following partial custody rights in appellee:

44

One weekend a month during the months of February, March, May, June, September and October.

Every Labor Day extended weekend.

Every Christmas school vacation from 12/27 until 12/31.

Three consecutive week-days of every Easter/Spring school vacation.

The Friday through Sunday following Thanksgiving each year.

Three weeks during the school summer vacation each year.

By our calculations, during a typical year with a total number of 172 school-free days, the order requires them to be with their grandmother 46 days or approximately one fourth of the children's free time. We find that based on the uncontroverted facts established at trial the partial custody granted was excessive and overly burdensome.

The statute authorizing grand-parental visitation rights provides the following:

If a parent of an unmarried child is deceased, the parents or grandparents of the deceased parent may be granted reasonable partial custody or visitation rights or both, to the unmarried child by the court upon a finding that partial custody or visitation rights, or both would be in the best interest of the child and would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grand-parents of the deceased parent and the child prior to the application.

23 Pa.C.S.A. § 5311.

 Appellant asserts that the trial court failed to consider the best interests of the children and that the visitation schedule interferes with the parent-child relationship. We agree.

 This court has stated that the Custody and Grand-parents Visitation Act did not alter the present state of the law, but merely codified law which had evolved through various appellate decisions dealing with grandparents'

rights in seeking visitation and/or custody. The guiding polestar remains the best interests of the child. *Hughes v. Hughes*, 316 Pa.Super. 505, 463 A.2d 478 (1983). In reviewing child custody contests, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support the trial court's factual conclusion, and may not interfere with those conclusions unless they are unreasonable in light of the trial court's factual findings, and thus, represent a gross abuse of discretion. *Commonwealth ex rel. Robinson v. Robinson*, 505 Pa. 226, 478 A.2d 800 (1984). This court's scope of review is broad and requires an independent examination of the evidence before reaching its conclusion. We need not accept a finding of fact which has no competent evidence to support it. *Bury v. Bury*, 312 Pa.Super. 393, 458 A.2d 1017 (1983). Normally in matters such as the hours of a visitation, great deference should be given to the hearing judge, who was in a better position than the appellate court to assess the particular circumstances. However to fulfill its own responsibility an appellate court should not accept a finding that is not supported by, or is contradicted by the record. *Id.*[1]

**1.** We point out the following instances where the trial court's conclusions are not supported by the record.

A) The court concluded that the practice of hand making Halloween costumes was enjoyed by the petitioner before the death of the children's mother. (Opinion p. 33). The record shows that it was actually the decedent who made the children's costumes.

B) The court concluded that the appellant's current wife is the primary source of this conflict and that appellee currently holds no ill will toward appellant or his wife. At trial, the court stated on the record, "[Y]ou both look at each other and you both take the most negative position you can take from the standpoint that the other person does. Now in the beginning, I don't believe that was true of Mrs. Johnson, but she's that way now too."

C) The court opined that from the birth of the children onward, Mrs. Johnson was an active participant in the events of their lives. Holidays, vacations, and important milestones all were shared. (Opinion p. 36). Petitioner testified only that she was there at the children's births, christenings, birthdays and Christmas.

D) In its opinion the court states that appellant refuses to give appellee "appropriate credit for raising her daughter, Shirley, into the wonderful woman that he had married...." The record shows however, that when asked, "Don't you think Mrs. Johnson deserves some

After reviewing the record as a whole, we feel the court lost sight of the polestar in any dispute over custody—the best interest of the children. During the hearing the trial court stated:

> The problem I have is who is really at fault. That's where this case is going to rise and that's where this case is going to fall. I have warned everyone. (N.T. p. 84).

During cross-examination appellant, when asked if appellee should have contact with the children, responded:

> I think she should have contact with the children. I would like it to be that it didn't interfere with what we are trying to do in building a family, sir.
>
> THE COURT: Why does it have to interfere? ...
>
> THE WITNESS: Your Honor, the children have five school days off for Christmas. You gave her five school days.
>
> THE COURT: She hasn't seen the children, that's why. I was trying to get the message across that she's got the right to see these children.... If in fact I do come down with an order that's going to grant Christmas, it's not going to be five days ... (N.T. p. 180).[2]
>
> I want to tell you something. If I was to have known that she was going to make these other things,[3] I would have said to her, look, if you want to make them for our daughters, make them for the others—I wouldn't have gone out and got new ones.... I wouldn't have made a big deal out of the second one. (N.T. p. 184).

Then during the direct examination of appellant's wife, with respect to the costumes the court stated:

credit for raising Shirley properly?" appellant responded in the affirmative. N.T. p. 168.

These instances tend to indicate a certain slant placed on the facts by the court that we need not adopt.

2. The order appealed from granted five days custody each Christmas.

3. Appellee attempted to continue the tradition, formerly practiced by her daughter, of making Halloween costumes for the children. Appellant's new wife also wished to carry on the tradition. The court erroneously concludes that appellee and not her daughter shared this tradition with the children.

Why can't you do something else? Why can't you just say I'll do something else? You knew this was already established. I'll make a big deal out of Thanksgiving.[4] You come in here and tell me you have the same interests. I've got the same interests—never mind. You'll never understand. I'm beating a dead horse. (N.T. p. 192).

A thorough reading of the transcript and the trial court's 46 page opinion leaves one with the impression that the court arrived at the conclusion that appellant is unworthy and that appellee, as a more worthy grandparent, is entitled to extensive custody.[5] The court attempts to reward appellee by allowing her more time with the children. This is improper. The substantial rights of the parties that must be considered here and which are of paramount importance are the best interests of the children, not the interests of the litigants. *Heddings v. Steele,* 344 Pa.Super. 399, 496 A.2d 1166 (1985), *affirmed,* 514 Pa. 569, 526 A.2d 349 (1987). The trial court appeared to be primarily concerned not with the best interest of the children but with finding the origins of the discord between the litigants. In an action such as this the children are not a prize to be awarded to the winner, they are the person whose interests must be protected.

The court failed to consider evidence presented by appellant regarding the children's best interests. The record

---

4. The custody order provides that the children will be with appellee the long weekend after every Thanksgiving.

5. The trial court stated:

There can be no accurate measurement of the overwhelming importance of petitioner to the lives of Laura and Kathcrine Diesinger during this period. [just after the death of their mother.] She not only shared a large amount of time with the children, but it was time when they were most dependant. It is difficult to envision any grandparent being more involved with their grandchildren than was petitioner. Nor can this court conceive of a person more worthy of receiving the panoply of rights contained in [the Act]. (Opinion p. 37).

and:

Moreover, her efforts on behalf of the children during the months of their mother's sickness and death and their father's subsequent depression bordered on the heroic. (Opinion p. 30).

discloses that the order requires appellee to make long distance trips to pick up the children as appellee lives 215 miles from appellant. The round trip requires between eight and ten hours driving time. Many times appellee will be returning to her home with the children at 10:00 PM after being on the road since noon.[6] Appellant's expert witness recommended against the children spending two day weekends with their grandmother because of the distance. Although the court accepts the expert's testimony on other points, this recommendation is not addressed in its opinion. We find that the frequency of the visits ordered by the trial court given the long distance appellee must travel with the children, four to five hours each way over a forty-eight hour period, to be unreasonable.

Appellant's expert also recommended, because of the traumatic loss of their mother at a young age, that the children spend no more than one week at a time away from appellant and his wife. The court's opinion fails to address this recommendation as well and the order allows for up to three consecutive weeks of custody in the summer. The very substantial amount of time the order provides for appellee with the children is more in line with shared custody awarded in a divorce action than partial custody awarded a grandparent. See, *Suroviec v. Mitchell*, 347 Pa.Super. 399, 500 A.2d 894 (1985) (Maternal grandparents with whom children lived for three years before mother's death, allowed to visit with children five hours on third Sunday each month). Even in a custody dispute between the natural parents the distance between the parents' homes may preclude week-end visits. See, *Fisher v. Fisher*, 370 Pa.Super. 87, 535 A.2d 1163 (1988). There is no question that appellee provided much needed love and support at a turbulent time in the children's lives. But the purpose of the Act is not to replace a mother with a grandmother as

**6.** The record shows that appellee has a daughter two and one half hours away from appellant where custody may sometimes occur. The order does not specify the use of this site but leaves the question of location to the better judgment of appellee.

the primary caregiver but to continue a healthy relationship if to do so is in the child's best interest.

■ As we said above, the polestar of any child custody dispute is to reach a decision which serves the best interests of the child. The factors to be considered include the child's physical, intellectual, emotional and spiritual well-being. *Beers v. Beers,* 342 Pa.Super. 465, 493 A.2d 116 (1985). Nowhere in its extensive opinion does the court perform this detailed, child-centered, analysis as required by the statute.

> In a dispute between a parent and a third party, including a relative such as a grandparent, the parent has a prima facie right to custody which will be forfeited only if convincing reasons appear that the child's best interest will be served by an award to a third party.... As the amount of time requested moves the visit further from a visit and closer to custody, the reasons offered in support of the request must become correspondingly more convincing.

*Commonwealth ex rel. Zaffarano v. Genaro,* 500 Pa. 256, 455 A.2d 1180 (1983), (adopting language from *Commonwealth ex rel. Williams v. Miller,* 254 Pa.Super 227, 385 A.2d 992 (1978)), also *Bishop v. Piller,* 399 Pa.Super. 52, 581 A.2d 670 (1990) (Paternal grandmother sought visitation rights with child). The amount of time granted appellee by this order necessitates a substantial showing that the custody is in the best interests of the children. We feel that given the animosity between the parties here and the great distance between their homes, appellee has not sustained the burden required for the extensive partial custody rights granted her.

■ The trial court noted on the record that despite the animosity between the litigants, the children seem to be happy and healthy. *See, Fatemi v. Fatemi,* 339 Pa.Super. 590, 489 A.2d 798 (1985) (Father's actions in removing children to Iran without mother's knowledge and later to Bermuda in order to thwart mother's custody rights did not warrant loss of custody where children were thriving in his

care). Our Supreme Court has recognized that the rivalry between parents and grandparents for a child's affection can be devastating. The appropriate inquiry when animosity exists is not where to place the blame but rather how does it affect the best interests of the children. *Zaffarano, Supra,* (petition for partial custody denied where it was not in child's best interest to be placed in cross-fire between father and grandparents). By focusing on where to place the blame for the discord, the trial court lost sight of the function it is charged with performing. We conclude therefor, that the trial court committed reversible error by failing to take into consideration how this discord affects the children and how it interferes with the parent-child relationship.

On remand the court should address the animosity between the parties involved and how it affects the best interest of the children and the parent-child relationship. The court should also address the distance between the parties' homes, the testimony of appellant's expert and the limited contact appellee had with the children before her daughter's death. The court must state the facts supporting its determination with respect to the best interest of the children.[7] Furthermore, when performing the analysis, the court must not impose its own moral standard on the litigants.[8] We must keep in mind that the parents in any

[7]. Appellant also asserts that it was an abuse of discretion to: limit his telephone access to the children during weekends with appellee, refuse to consider testimony regarding personal hygiene and upbringing, refuse to hear additional testimony relating statements made by appellee against appellant in the presence of the children. Because we find, based on the record presented, that the weekend visits are contrary to the best interests of the children, we need not address the telephone issue. As personal hygiene and upbringing are integral to the best interests of the children, these factors should be discussed by the court. Finally based on the finding that the children were coached by appellant, the court was justified in denying appellant's request for an additional evidentiary hearing where to grant such a hearing would place pressures on the children recognized as devastating by the *Zaffarano* court.

[8]. The trial court must never impose its own moral code upon the litigants in a custody dispute, rather it must determine how the interests of the children will be best served. *McAnallen v. McAnallen,*

custody dispute have a prima facie right to uninterrupted custody and the more time awarded to the grandparent the more convincing the evidence must be that the award is in the best interest of the children.

Order vacated and case remanded for proceedings consistent with this opinion.

300 Pa.Super. 406, 446 A.2d 918 (1982). Here the trial court at various times stated references to his own childhood and the important role his grandparents played. The childhood memories of the court do not enter into the fact-specific best interest determination. The court must state the facts of record upon which the best interest determination is based.