J-A02032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| T.G. AND C.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.W. | : | |
| | : | |
| Appellant | : | No. 769 WDA 2021 |
| | : | |

Appeal from the Order Entered June 23, 2021
In the Court of Common Pleas of Greene County Civil Division at No(s):
AD-107-2020

BEFORE:  OLSON, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:            **FILED: JANUARY 31, 2022**

This case concerns a dispute over the custody of the minor child, J.W. (Child), between M.W. (Father) and T.G. and C.G. (Maternal Grandparents) after the unfortunate passing of T.G. (Mother) of brain cancer.  Father challenges the final custody order entered by the Court of Common Pleas of Greene County (trial court) finding that Maternal Grandparents had standing to bring the action due to Mother's death and, alternatively, the trial court's finding that they stood *in loco parentis* to the Child and it was in the best interest of Child to grant them partial physical custody.  We affirm.

We take the following background facts and procedural history from our independent review of the record and the trial court's April 29, 2021 opinion.

_____

[*] Retired Senior Judge assigned to the Superior Court.

**I.**

Child was born in November 2013. Mother and Father were married from 2012 until 2016. Until the parents separated in 2016, parents, Child and Child's half-sister, L.G.[1] (collectively, Children), resided together. After the parents separated, Child and L.G. resided with Mother in Greene County, first in a farmhouse owned by Maternal Grandparents and then in a home Mother purchased in Waynesburg Borough in 2017. On December 11, 2019, Mother died from brain cancer, and Maternal Grandparents moved the Children into their Greene County home. After Mother's funeral, Father moved Child to Father's childhood home in West Virginia.

On February 14, 2020, Maternal Grandparents filed a custody action seeking primary and/or partial physical custody and shared legal custody of Child, as well as a finding that they stood *in loco parentis* to Child.[2] The parties attended two conciliation conferences and on April 6, 2020, the trial court entered an interim custody order granting Father primary physical and sole legal custody and gave Maternal Grandparents partial physical custody every other weekend. On June 15, 2020, Father filed a petition for special relief in

---

[1] L.G. is not Father's biological child. After Mother's passing, L.G. moved with her father to Indiana. Maternal Grandparents also filed the Allegheny County case seeking custody of L.G. that was later transferred to Indiana.

[2] Maternal Grandparents filed a separate complaint in Allegheny County seeking custody of L.G. (Allegheny County action).

which he requested a modified interim custody order and discovery in the form of a transcript from an *in camera* conference in the Allegheny County case concerning Child's half-sister, L.G., that he argued was relevant to credibility and the Maternal Grandparents' relationship with the Children. The trial court denied the motion on June 23, 2020.[3]

In the custody hearings, the court heard testimony from Maternal Grandparents, Father, Rhonda Kinser (Mother's friend and neighbor), Sara Gardone (Mother's Aunt), P.C. (Child's piano teacher) and Charles Waychoff (father of Child's half-sister, L.G.). The parties stipulated to the submission of written reports. Child, then approximately seven-years-old, did not testify due to his young age. The following pertinent evidence was adduced at the hearing.

Following the parents' separation in 2016, Father worked in the tri-state area surrounding Morgantown, West Virginia, in the gas industry. There was no custody order in place. Until May 2018, when he was transferred to Oklahoma, he would visit Child every four to five weeks for a few days to a week as arranged by him and Mother. After he was transferred, he would visit Child every three months.

---

[3] On September 21, 2020, Father filed a second petition for special relief seeking to modify the interim order that was not argued prior to the custody hearings.

Mother had been a survivor of Hodgkin's Lymphoma. In 2016, Mother was diagnosed with breast cancer and in July 2018, she was diagnosed with brain cancer. Maternal Grandmother testified that Mother's condition worsened by late August 2018 and, with Father's full knowledge and consent, Maternal Grandparents "essentially resided" at Mother's home, sleeping there on alternating nights, to help care for the Children. (Trial Court Opinion, 4/29/21, at 7). Maternal Grandmother stated that Mother was physically limited and unable to continuously perform parenting functions. Maternal Grandparents assumed the childcare duties, including transporting the Children to lessons and other activities, church, school and doctors' appointments, attending school conferences, making decisions related to activities and their mental and emotional health, and monitoring homework. Multiple witnesses testified that Maternal Grandparents stayed at Mother's home and played a critical role in caring for Child and that he had a strong bond with them. (*See* N.T. Hearing, 11/03/20, at 41-45, 48, 57-58, 104, 177, 259-60; 282, 284-85); (N.T. Hearing, 12/17/20, at 14-16).

Immediately following Mother's passing, Maternal Grandparents moved the Children to their Franklin Township home. Maternal Grandmother testified that Child told them that he wanted to remain with Maternal Grandparents and go to school in Greene County. After attending Mother's funeral, Father removed Child from Maternal Grandparents' care and took Child with him to his childhood home in West Virginia and immediately gave notice to his

employer. Child has lived with Father and attended school in West Virginia since that time. It is approximately three hours between Father's home and Maternal Grandparents' residence.

Maternal Grandparents testified that they had to file the custody complaint because Father grew increasingly hostile after taking Child to West Virginia, threatening to withhold Child from Maternal Grandparents unless they withdrew the custody action and was trying to erase all memories of Mother and her family, shouting at them in front of Child, denying them telephone contact and telling Child that they were trying to have the government take him away. As of the December 17, 2020 hearing, Maternal Grandparents had no calls with Child since May 2020. Father told them he had to sell Child's iPad that they had been using to talk with Child to pay for clothes, a fact the court found incredible.

In the spring of 2019, Mother underwent experimental treatment that temporarily improved her health and increased her energy, thus relieving Maternal Grandparents from having to perform the parental duties for the Children. Mother's neighbor testified that Mother had a little increased vitality in the spring of 2019 and was not certain if Maternal Grandparents were sleeping at the house during the four to six-week period. Maternal Grandfather testified that for approximately three months, Mother could attend to some of Children's needs. Waychoff testified that he noticed an improvement in Mother due to the experimental treatment, and that she

competently represented herself in two separate court proceedings involving L.G.

Mother had a "bucket list" of places she wished to visit, and between April and August 2019, she traveled to Boston, Florida and New Orleans. Maternal Grandmother accompanied her on the Boston and Florida trips and her aunt accompanied her to New Orleans. From August 2019 until her death on December 11, 2019, Mother was extremely fatigued and often slept.

The parties stipulated to the submission of expert testimony by the way of a report by Maternal Grandparent's witness Andrea Buchanan, a school counselor for the Central Greene School District, who observed Child in the classroom. Her report stated that in her professional opinion, she would strongly advise that Child spend time with Maternal Grandparents and be in Greene County, as it was his early childhood home since otherwise, he would have to abruptly adapt to new routines with a new family. She stated it was her professional opinion that Maternal Grandparents "are the foundation for [Child]'s well-being" since he has been with them since birth, and that he has suffered an intense trauma due to Mother's passing and his removal from his Greene County home and the life he knew there.

Contrary to Maternal Grandmother's testimony, Father testified that Maternal Grandparents did not inform him that they were staying with Mother and Child in the Waynesburg home and did not tell him about the extent of Mother's poor condition. Waychoff testified similarly and stated that in the

approximate six times he was at the home to exchange custody of L.G., he saw neither Maternal Grandparents nor evidence that they lived there. According to Waychoff, in response to his concerns about Mother's ability to care for L.G., Maternal Grandmother told him that Mother was fine and that they were just filling in when needed. Father testified that during this time, Child visited with his paternal family approximately once a month, and in 2018 and 2019, he went on vacations with L.G. and his paternal grandparents.

Father admitted that he became uncooperative when Maternal Grandparents filed for full custody, but testified that he is not trying to take Child away from them or deny them a connection to Child and agrees that Child should spend time with them. Prior to Maternal Grandparents filing the custody complaint, he brought Child to Waynesburg to visit with them over the 2019 Christmas holidays and two to three times in early 2020. Father also testified that he continues to cultivate memories of Mother, bringing Child to Mother's grave on the anniversary of her death and putting items related to her in Child's bedroom. He stated that Maternal Grandparents can be intrusive in their attempts to maintain contact, and that Child has started asking why he was visiting with Maternal Grandparents so often and was getting angry when he would have to call them every other day.

Father's expert witness, Stephanie Todd, PLC, testified by way of expert report that Child began attended counseling sessions with her at Life Strategies Counseling Services in May 2020. Progress notes submitted with

- 7 -

the report reflect that Child told her he does not like to spend so much time visiting or speaking with Maternal Grandparents because he is angry and afraid they will take him away from Father and that he enjoys living at Father's home. He has connected with his paternal family and enjoys spending time with his sister, whom he had seen with both his Father and while at Maternal Grandparents' home. Father reported that Child had exhibited a change in behavior in that he did not want to let Father out of his sight or play outside alone. At the time of her October 13, 2020 report, Ms. Todd identified Child as bright and engaging, stating that he fully participated in his therapy sessions, appeared to be progressing through his grief well and had adjusted to moving and attending a new school.

Based on the testimony and documentary evidence, the court found that Maternal Grandparents had standing to pursue the action pursuant to 23 Pa.C.S. § 5325 due to Mother's death and, alternatively, based on acting *in loco parentis* between October 2018 until Mother's passing in December 2019. After a thorough analysis of the custody factors, it found that it was in the best interest of Child to grant Father sole legal and primary physical custody and gave Maternal Grandparents partial physical custody alternating holidays, one weekend per month during the school year, and approximately two months in the summer. (**See** Trial Court Opinion, 4/29/21, at 30); (Custody Order, 6/23/21, at 2-3, 5-7). Father timely appealed.

Father argues that the trial court erred in finding that Maternal Grandparents proved that they had *in loco parentis* status under 23 Pa.C.S. § 5324(2). He also contends that the trial court erred by not properly considering custody factors pursuant to 23 Pa.C.S. § 5328, in failing to consider the effect of the visitation schedule on the parent-child relationship, and in denying his petition for special relief seeking a modified interim custody order and discovery.

## II.

## A.

Father argues that the evidence was insufficient for the court to find that Maternal Grandparents stood *in loco parentis* to Child pursuant to 23 Pa.C.S. § 5424(2), which is an issue of standing. (**See** Father's Brief, at 10-16). He posits that this finding was critical to the court's consideration of the substantive issue regarding the best interest of Child. (**See id.** at 11).[4]

"Generally, the Child Custody Act does not permit third parties to seek custody of a child contrary to the wishes of that child's parents." **K.W. v. S.L.**, 157 A.3d 498, 504 (Pa. 2017). As is relevant to this case, pursuant to Section 5325, a grandparent has standing to move for custody where he or she is the parent of a child's deceased parent or where the child has lived with

_____

[4] We review the trial court's determination of standing *de novo*, and our scope of review is plenary. **M.J.S. v. B.B.**, 172 A.3d 651, 655 (Pa. Super. 2017) (citation omitted).

- 9 -

them for 12 months. **See** 23 Pa.C.S. § 5325(1), (3). Section 5324 provides, in pertinent part, that either a person who stands *in loco parentis* or a grandparent who is not *in loco parentis* to a child but assumes responsibility for him and he lives with the grandparent for 12 months, may move for custody. **See** 23 Pa.C.S. § 5324(2)-(3)(C). Hence, the issue of *in loco parentis* status goes to the threshold question of whether a party has standing to pursue an action. **See B.B.**, **supra** at 655-56 (Pa. Super. 2017).

In this case, it is undisputed that Maternal Grandparents had standing to bring this action pursuant to Section 5325(1). (**See** Father's Brief, at 10); (**see also** Trial Ct. Op., at 2-3); 23 Pa.C.S. § 5325(1). Father observes that once standing to bring the action is established, the inquiry turns to the substantive question of whether the evidence was legally sufficient to support the substantive claim, but that the court's alternative finding that Maternal Grandparents stood *in loco parentis* to Child was "relevant and critical" to its decision. (**See** Father's Brief, at 10-11); **see also R.M. v. J.S.**, 20 A.3d 496, 513 (Pa. Super. 2011) (finding that maternal grandmother had standing to pursue custody but had to establish substantive claims).[5]

_____

[5] We are cognizant that **J.S.** stood in a different procedural posture from this case and found that grandmother had standing pursuant to the now repealed Grandparents Custody and Visitation Act, 23 Pa.C.S. § 5301-5315. However, this does not affect the principal for which we cite it that once a party establishes standing, inquiry turns to the substantive merits of the action.

Although the court stated that the *in loco parentis* finding was relevant and critical to its determination of the best interest of Child, a full review of its opinion reveals that it decided the *in loco parentis* issue only in its standing determination prior to making a decision on custody, and it was the evidence underlying that finding, not its legal conclusion, that the court applied to determine the custody arrangement that was in Child's best interest. (**See** Trial Ct. Op., at 8) (noting that evidence offered to establish *in loco parentis* was relevant and critical to determination of Child's best interest); (**but see** *id.* at 10) (stating that finding that Maternal Grandparents acted *in loco parentis* "establishes they played a critical role" in caring for Child and is "relevant and critical to the [c]ourt's determination related to the custody arrangement that is in the best interest of [Child].").

Indeed, the court observed that a finding of *in loco parentis* standing does not affect a natural parent's "*prima facie* right to custody which will be forfeited only if convincing reasons appear that the child's best interest will be served by an award to the third party[]" because "[s]tanding established by virtue of *in loco parentis* status does not elevate a third party to parity with a natural parent in determining the merits of the custody dispute." (Trial Ct. Op., at 3-4) (citing **Jacob v. Shultz-Jacob**, 923 A.2d 473, 488 (Pa. Super. 2007)).

Therefore, it appears to us that the court's alternative legal finding of *in loco parentis* standing did not affect its best interest analysis. Hence, because

Maternal Grandparents indisputably had standing pursuant to 23 Pa.C.S. § 5325(1), we find no error in the court's finding that Maternal Grandparents had standing and decline to address the alternate *in loco parentis* theory. Accordingly, we will turn to Father's second issue: whether the court's award of partial physical custody to Maternal Grandparents was in Child's best interest.

**B.**

Next, Father posits that the court failed to properly consider certain custody factors of 23 Pa.C.S. § 5328(a), and that the custody award was unreasonable where it "unfairly interferes with Father's parent/child relationship" and fails to serve the best interest of Child pursuant to 23 Pa.C.S. § 5328(c).[6]  (***Id.*** at 2); (***see id.*** at 2-3, 16-41).

---

[6] It is well-settled that:

> Our standard of review over a custody order is for a gross abuse of discretion.  If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused.  Our scope of review over custody disputes is broad; this Court is not bound by the deductions and inferences the trial court derives from its findings of fact, nor must we accept the trial court's findings of fact when these findings are not supported by competent evidence of record.  Our paramount concern in child custody matters is the best interests of the children.

***Yates v. Yates***, 963 A.2d 535, 538–39 (Pa. Super. 2008) (citation omitted).

Section 5327 of the Custody Act expressly directs that in an action between a parent and a third party, the presumption is that custody will be awarded to the parent unless rebutted by clear and convincing evidence. ***See*** 23 Pa.C.S. § 5327(b).

In entering an order of custody, the court is required to determine the best interest of the child based on a thorough analysis of the custody factors enumerated in Section 5328(a).[7] ***See J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa. Super. 2011).

---

[7] The 16 custody factors include:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.
(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

*(Footnote Continued Next Page)*

Specifically, as to grandparents, Section 5328(c) directs:

(1) In ordering partial physical custody or supervised physical custody to a party who has standing under section 5325(1) … the court shall consider the following:

(i) the amount of personal contact between the child and the party prior to the filing of the action;

_____

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

(ii) whether the award interferes with any parent-child relationship; and

(iii) whether the award is in the best interest of the child.

23 Pa.C.S. § 5328(c)(1).[8]

This Court has noted that, "[w]hile there is no required level of detail the trial court must set forth in support of its assessment, the explanation must address all relevant factors." **C.B. v. J.B.**, 65 A.3d 946, 955 (Pa. Super. 2013) (emphasis added).

Here, the Father posits that the court failed to consider the impact on the parent/child relationship pursuant to Section 5328(c). (**See** Father's Brief, at 16). He is also particularly concerned with factors 1, 5, 6, 8 and 9 of section (a) because the custody order "does not promote the need for stability and continuity in [] [C]hild's education, family life and community life" and that the court failed to "adequately analyz[e]" the conflict between the parties and how it would affect their ability to cooperate and encourage "frequent and continuing contact with the other party" pursuant to 23 Pa.C.S. § 5328(a)(1), (4) and (13). (Father's Brief, at 33, 35).

The record reveals that the trial court exhaustively considered each of the 16 custody factors listed in Section 5328(a). (**See** Trial Ct. Op., at 19-

---

[8] Father references subsection (c)(2), which relates to a grandparent who has standing due to being *in loco parentis* with a child. As it is undisputed that Maternal Grandparents have standing because of Mother's death, we will refer to subsection (1), although both have nearly identical pertinent language.

29). It did not expressly address the custody factors under Section 5328(c), and instead stated that in determining the custody issue, it:

> considered all relevant custody factors and [has] made [its] decision based on the best interest of [Child], and in consideration of the law as it relates to a custody dispute between a natural parent and a third party (grandparents resulting because of the death of the natural mother). It should be noted we have also considered the relationship that [Child] established with [Maternal Grandparents].

(*Id.* at 14-15).

While we agree with Father that the court did not expressly discuss what the effect of the partial custody arrangement would be on Child's relationship with Father, such a finding would have been purely speculative, as the arrangement had not yet occurred, so there was no evidence about it and the trial court was unable to make any finding as to this. Father points to no testimony, expert or otherwise, on what the effect of increased visitation with Maternal Grandparents would be on the parent/child relationship. Accordingly, had the court mentioned this factor, all it would have been able to state is that it could make no finding on it. Hence, we conclude that it could not have affected its custody decision and any error in this regard was harmless.

As to Father's remaining claims, we remind him that, "with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." *D.R.L. v. K.L.C.*, 216 A.3d 276, 279 (Pa. Super. 2019) (citation omitted). While Father

encourages us to focus on only certain custody factors, the decision of what is in the best interest of Child requires a balancing and weighing of **all** relevant factors. *See* 23 Pa.C.S. § 5328(a).

We note first that although Father argues extensively that he has a fundamental right to custody of Child as his natural parent, (*see* Father's Brief, at 16-19), the court did not question this right. In fact, as stated previously, the court was fully cognizant of the heavy burden a third-party grandparent bears *vis a vis* the *prima facie* rights of a natural parent to make decisions for his child and took this into consideration. (*See* Trial Ct. Op., at 3-4).

Further, Father's specific claims are not persuasive. For example, contrary to his allegation that the court failed to consider the level of conflict between the parties and its effect, the court's opinion is replete with acknowledgements about the animosity between them but that, based on its observation of the evidence and testimony, both Father and Maternal Grandparents love Child and it would be in his best interest to have continued relationship with all parties. For example, the court stated that:

> In weighing the testimony of various witnesses, and as the court is saddled with the determination of the facts, we are eminently convinced that there is a high level of conflict between [Maternal Grandparents] and [Father]. It is also equally clear that each party has great love and affection for [] [C]hild … , yet each party is flawed to the extent that they often cannot agree or communicate as to what is best for [him]. … [T]he court does have concerns as to how [Child] is handling the issues related to [] [M]other's death, and the sudden move from his home and

important family members. The conflict that arises between the parties is also of concern to the court.

(*Id.* at 18-19); (*see also id.* at 28) ("The court factually determines, again, that the parties have a certain level of conflict[.] … Although, there is without question conflict between the parties[.]…"); (*see id.* at 30) ("conflict between the parties will likely continue. However, on balance, [the custody arrangement is appropriate].").

Additionally, the court expressly considered which party is likely to encourage frequent contact with the other party and the need for stability and continuity. (*See id.* at 19-22). It found that Maternal Grandparents were willing to encourage and permit frequent and continuing contact and that Father was less cooperative since the filing of this litigation. (*See id.* at 19-20). The court was concerned about Father's reluctance to continue to have a relationship with Maternal Grandparents. As detailed in Section I above, the record supports these findings. For example, Maternal Grandmother testified that they filed the custody complaint because Father was becoming increasingly hostile after taking Child to West Virginia, denying them telephone contact him. As of the December 17th hearing, Maternal Grandparents had not had any telephone contact with Child since May 2020, ostensibly because Father had to take away Child's iPad to pay for clothing, a claim the trial court found incredible. (*See* N.T. Hearing, 11/03/20, at 226, 228, 240-41); (N.T. Hearing, 12/17/20, at 139, 142); (Trial Ct. Op., at 26). Although Father testified that he does not intend to restrict Maternal

Grandparents' contact with Child, he admitted that he had become uncooperative since the commencement of this action, but that he had brought Child to see Maternal Grandparents over the Christmas holiday and in early 2020. (*See* N.T. Hearing, 11/03/20, at 185, 194); (N.T. Hearing, 12/17/20, at 64-65, 147-48, 166, 189-90).

Furthermore, Father ignores the fact that for the three years prior to Mother's death, he lived and worked out of state in Kentucky and "[i]t is without question that [he] was not involved in the daily life of [Child]." (Trial Ct. Op., at 17). Mother was Child's primary provider and Maternal Grandparents assumed these responsibilities when Mother became unable to perform them over a year prior to her passing in December 2019. (*See id.* at 17). Upon Mother's passing, Father removed Child from the home, family, friends and community he knew and moved him to West Virginia. Although Father posits this is inaccurate because the record reflects Child visited and vacationed with paternal family, this does not render the court's finding that Father removed Child from the only home and community in which he had resided for the first nearly seven years of his life to be an abuse of discretion. While we acknowledge that the court did not afford much weight to the report of Father's expert, it briefly mentioned the report and that it did not give "significant weight" to Child's living preference because of his age. (*See* Trial Ct. Op., at 24). In fact, it appears that the court did not give a lot of weight to the reports offered by either party, as the decision does not mention the

one produced by Maternal Grandparents at all. Again, it was within the province of the court to assess the weight to be afforded to any testimony and evidence presented, and we cannot conclude that the trial court abused its discretion on the issue of which party is likely to encourage frequent contact with the other party and the need for stability and continuity.[9]

Based on the foregoing, under the circumstances in this case, we will not interfere with the court's discretion in granting Maternal Grandparents partial physical custody where it engaged in a thorough analysis of the relevant custody factors, its findings of fact are supported by the evidence and the record does not reflect that it acted with partiality, bias or ill will.[10] **See**

_____

[9] In addition to the factors raised by Father, this Court has reviewed the trial court's thorough opinion and we conclude that its findings are supported by the record. It found there was no evidence of abuse; that Mother and Maternal Grandparents performed the parental duties on behalf of Child prior to Mother's passing; that both homes offered the availability of extended family; that Child's relationship with his half-sister L.G. is good and that, although its ability to enter a decision about L.G. was limited since she lives in Indiana, it could continue to be maintained at both homes; that, "on balance," both parties caused emotional distress to Child, but love him and that this could be remedied; that the distance between the parties was not an issue for custody arrangements; that all parties could care for Child; and there was no testimony of drug or alcohol abuse or to indicate that any party has mental or physical conditions that are of concern. (**See** Trial Ct. Op., at 20-29).

[10] Neither are we persuaded by Father's reliance on **Johnson v. Diesinger**, 589 A.2d 1160 (Pa. Super. 2011). In **Diesinger**, this Court vacated the trial court's grant of partial physical custody to maternal grandmother. However, the facts of the case are distinguishable. In that case, grandmother testified that she was "very, very close" with her grandchildren, explaining that she was with mother when they were brought home from the hospital, attended their christenings and visited the family for birthdays and Christmas. **See**
_(Footnote Continued Next Page)_

***Yates***, ***supra*** at 588-89. Father's challenge to the trial court's weighing of the custody factors to conclude that the custody award is in the best interest of Child lacks merit.[11]

**C.**

Father also claims that the trial court erred in denying his petition for special relief in the form of a request for modification of the interim custody order and in the form of an order authorizing discovery. (***See*** Father's Brief, at 41-42). He states, without reference to any authority, that the court erred in denying his request for a transcript from an *in camera* conference in the L.G. custody case because it could have been used for trial preparation and cross-examination and challenges the entry of the interim custody order "by reference [to] arguments and authorities stated earlier in []his [b]rief.". (***Id.*** at 43).

The interim custody order was rendered moot by the entry of the final custody order in this matter and is not subject to any exceptions to the

---

***Diesinger***, ***supra*** at 1160. She also stated that when mother/her daughter was in the hospital, she moved into her daughter's home "at various times" and cared for the children "on several occasions." ***Id.*** Here, however, the record reflects that Maternal Grandparents moved in with Child and Mother for approximately 16 months from August 2018 until December 2019 and took on nearly all parental duties. (***See*** N.T. Hearing, 11/03/20, at 19, 20, 22, 25, 28, 34, 35-38, 40, 44-48, 56, 259-60, 262-63, 273, 284, 290, 305).

[11] While we are cognizant of Father's concerns about a potential future effect on his relationship with Child, we remind him that either party may move for a modification of the custody order should it be in Child's best interest. ***See*** 23 Pa.C.S. § 5338(a).

mootness doctrine; thus, we will not consider its merits. ***See In re Gross***, 382 A.2d 116, 119-20 (Pa. 1978).

We now turn to the discovery issue, which requires that we review the trial court's order for an abuse of discretion. ***See Commonwealth v. Snell***, 811 A.2d 581, 591 (Pa. Super. 2002), *appeal denied*, 820 A.2d 162 (Pa. 2003). In his petition for special relief, Father requested the transcript from the *in camera* conference in the Allegheny County case on the bases that it was relevant to consideration of Maternal Grandparents' role prior to Mother's passing and the credibility of the witnesses. (***See*** Petition for Special Relief, 6/15/20). In denying the petition, the trial court noted the general rule that in custody matters, discovery is only permitted by special order of court and that, based on argument of the parties and review of their memoranda of law, it was denying Father's request. (***See*** Trial Court Order, 7/20/20); ***see also*** Pa.R.C.P. 1915.5(c)). We discern no abuse of discretion and Father has not met his burden to provide pertinent legal citation and discussion thereof to prove otherwise. ***See*** Pa.R.A.P. 2119(a)-(b).

For all the foregoing reasons, Father's issues on appeal are denied and the trial court's order is affirmed.

Order affirmed.

Judge Murray joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/31/2022